CONNOR v. THE GREEN POND, WALTERBORO AND BRANCH-
VILLE RAILROAD COMPANY.

1. An act entitled "an act to incorporate the Green Pond, Walterboro and Branchville Railway Company" does not relate to more than the one subject expressed in its title (*Const.*, art II., § 20), even though the act contains, besides the charter, provisions authorizing the County of Colleton to subscribe in county bonds to the capital stock of this company, upon certain conditions, such as petition for election, election, &c., and providing for a tax to pay interest on the bonds so issued.
2. The county commissioners having determined that the conditions precedent to a railroad subscription had been complied with, and having

issued to the railroad company county bonds in payment therefor, in action by taxpayers of the county to compel the cancellation of these bonds upon the ground that the conditions precedent had not been complied with, the burden of proof is upon the plaintiffs. They must show in such action, that the county commissioners acted without authority, or exceeded it.

3. Findings of fact by the Circuit Judge not disturbed.

4. Whether in a case like this the railroad company occupy the position of *bona fide* holders for value of the bonds issued to them, not considered.

Before HUDSON, J., Colleton, November, 1884.

The Circuit decree in this case, after reciting the act of incorporation and the pleadings, proceeded as follows :

The complaint showing these various matters and things upon its face, in the outset of the hearing a motion was made before me to dismiss the complaint, because it did not contain facts to constitute a cause of action. This motion I did not at the time grant, it being too grave a matter in my opinion to determine without a further investigation of the law, and without hearing further argument. I then, therefore, withheld my judgment upon that motion, and directed the plaintiffs to proceed with their testimony ; to the introduction of the testimony the defendants objected. The objection was overruled and the testimony received. I have heard argument of counsel fully upon the testimony and upon the law of the case, and propose now to render my judgment.

The first question that presents itself to my mind, and which I will pass upon now, is whether, after the bonds were issued and delivered to the railroad company, the plaintiffs, as taxpayers of the County of Colleton, will be admitted to question the validity of those bonds, and have an investigation made of the regularity or irregularity of the various proceedings of the board of county commissioners. During the progress of those proceedings there is no evidence that any objection on the part of these taxpayers, or others, was interposed to any part of the proceedings of the commissioners. No protest was preferred to the election, and now, for the first time, the validity of the bonds is attacked in the present complaint.

It is admitted by counsel on both sides that if these bonds were in the hands of *bona fide* purchasers for value, that these taxpayers could not assail their validity in this proceeding, or otherwise. Now, can they do so after the contract of subscription has been executed and the bonds delivered to the railroad company and the stock issued to the county ? I find in *Jones on Railroad Securities*, to which I am referred by counsel for the plaintiffs, that the author, in section 268, holds that the taxpayer has the right in this form of proceeding and at this stage to ask for relief, and bases his authority upon two North Carolina cases, cited in his report below, one found in 76 *N. C.*, at page 79, and the other in 72 *Id.*, at page 86. These cases are not before me, and I regret that I have not the time to examine them for my own satisfaction.

I find in 24 *Howard*, U. S. Supreme Court Reports, in the case of *Bissell et al* v. *The City of Jeffersonville*, that Mr. Justice Clifford, in delivering the opinion of the court, holds a different doctrine. Here is what he says on page 299 : "When the contract had been ratified and affirmed, and delivered to the railroad company in exchange for the stock, it was then too late to call in question the fact determined by the common council, and *a fortiori*, it is too late to raise that question in a case like the present, where it is shown that the plaintiffs are innocent holders for value." Whether there has been any modification in this opinion in any subsequent judgment I don't know. Upon reason and upon principle I think that it is a sounder doctrine than that which would suffer the taxpayer, who took no steps during the progress of the subscription to assert his rights, afterwards, and after the contract has been fully executed, to come forward and ask relief in the Court of Equity.

The process of preventing a subscription to a railroad company usually consumes a considerable length of time. All the taxpayers of the county are presumed to have full notice of so important and interesting a step, and, in fact, do ordinarily have actual notice, and are usually well informed in regard thereto. At all events, it is the duty of the taxpayer to watch such proceedings with vigilance, and to take such steps as will correct error or fraud on the part of those upon whom devolves the duty

of making the subscription. If he neglects so to do, and suffers the contract to become executed, and the railroad to become the holder of the bonds in exchange for their stock, sound policy requires that a court should not at so late a day interpose to relieve it.

I hold, therefore, that these taxpayers are too late in asking the relief at the hands of this court. It was an easy matter for them to know whether a *bona fide* subscription of $10,000 was made; whether a *bona fide* petition of a majority of the freeholders had been presented, and whether the election ordered thereupon resulted in favor of subscription or no subscription. If they paid no attention to these matters and suffered the county commissioners to execute the contract, they are excluded now to ask the court to relieve them. But inasmuch as I have admitted and caused all a full hearing, and suffered these taxpayers to introduce evidence with the view to show that conditions precedent to the issue of these bonds had not been complied with, I deem it my duty to proceed and pass upon the weight of that testimony.

It is contended by the plaintiffs' counsel that it is only necessary that the plaintiff should make out a *prima facie* case of want of compliance with these conditions precedent, and that the proposition is then thrown upon the defendants to show fully and satisfactorily that the conditions were complied with. I do not so regard the burden of proof. He who assails the validity of a bond, or the validity of a judicial act of the board of county commissioners, whether acting as a board in the regular discharge of their duty, or a special board designated by the legislature to do and perform a certain act, takes upon himself the burden of proving the invalidity of that bond, or the error of the judgment so rendered.

In regard to the judgment of this special board, the doctrine that all things are presumed to have been rightfully done until the contrary is made to appear is rule of evidence in this case. Now, to show that the majority of freeholders did not sign a certain petition may be a very troublesome and difficult thing to do, and the fact that it is a difficult thing to prove does not relieve the plaintiff from the burden of so proving. But before they can

have an executed contract rescinded, it devolves upon them to show by proof satisfactorily their right to have it so rescinded. The evidence adduced in this case, without attempting to repeat it here, is, in my opinion, not sufficient in justifying me in reversing the judgment of a local board, the members of which have large personal knowledge of the standing of the citizens of the county, and who possess facilities far greater than this court for ascertaining such a fact.

It appears from the evidence in the case that this board of county commissioners did take testimony, and resort to the most available testimony to ascertain the genuineness of the petition, and the status in regard to property of the various signers. The county auditor was examined and gave his certificate in regard to those petitions. Other citizens were examined. The board made use also, it is presumed, of their individual knowledge of the signers. They were in no haste to form a judgment, and after due deliberation decided that the majority of the freeholders of the county had signed a petition. For me now to hold otherwise would require full and satisfactory proof of the error committed by these men.

The evidence offered by the plaintiffs consists of the books of the auditor and the testimony of twenty-five or thirty persons, whose names appear upon the list, to the effect that they did not sign, nor did they authorize any one to sign for them. It is stated by counsel for the plaintiffs that of the names of the supposed signers of the petition, that there are 1,050 whose names do not appear upon the auditor's assessment book. This statement was allowed to be used by the counsel in the argument of the cause as a fact ascertained by them after comparison of the lists with the books.

In the argument of the cause counsel for the defendant gave a cursory examination to a part of the names and alleged that they had discovered that twenty-five of these names did appear upon the books. It is a well known fact that land is not always returned in the name or names of all the various persons entitled to a freehold interest therein. I fully appreciate the difficulty that the counsel for the plaintiffs labor under in verifying this list in full. The fact that the petitions seemed to have been signed

largely in the same handwriting, is relied upon as additional evidence of a want of genuineness. Giving full weight to all the testimony adduced by the plaintiffs, I do not deem it sufficient to overthrow the judgment of the board of county commissioners.

It is therefore ordered, adjudged, and decreed, that the restraining order and injunction hitherto granted be dissolved, and the complaint be dismissed with costs.

*Messrs. G. W. Trenholm* and *Mitchell & Smith*, for appellants.

*Messrs. W. P. Murphy, Edwards & Tracy, Henderson & Behre,* and *L. F. Youmans,* contra.

September 26, 1885.    The opinion of the court was delivered by

MR. JUSTICE McIVER. On December 23, 1882, the legislature passed an act entitled "an act to incorporate the Green Pond, Walterboro and Branchville Railway Company," in which the County of Colleton was authorized to subscribe to the capital stock of said company the sum of $60,000, in bonds of said county, upon certain conditions prescribed in the act. The conditions were as follows: 1. "That $10,000 of the capital stock of said company is first subscribed by individuals or other corporations." 2. That upon the *petition in writing of a majority of* the freeholders of said county, an election should be ordered by the county commissioners, at which the question of "subscription" or "no subscription" should be submitted to the qualified voters of said county. 3. That at such election "the majority of the ballots cast shall be for subscription." The act goes on to provide that the managers of such election "shall make returns, count the votes, and meet at the court house at Walterboro and declare the result of said election, which result shall be certified in writing by said managers to the chairman of the board of county commissioners." Provision is also made for the payment of said bonds by taxation.

A petition, purporting to be signed by a majority of the freeholders of the County of Colleton, was presented to the county

commissioners, asking that an election be ordered, and on May 15, 1883, that body granted an order for an election to be held on June 30, 1883, to determine the question of "subscription" or "no subscription," in which it is recited that it appeared satisfactorily to them that the condition requiring a petition for such election, signed by a majority of the freeholders of said county, had been complied with. In pursuance of this order, an election was held on June 30, 1883, and the managers appointed to conduct said election certified in writing to the chairman of the board of county commissioners on July 3, 1883, that a majority of the ballots cast at such election was in favor of subscription, whereupon the board, after reciting this fact, passed an order "that upon sufficient evidence being submitted to us by the corporators of said railroad company, that the sum of $10,000 has been subscribed, agreeably to section 5 of said act, it will then be lawful for the County of Colleton to subscribe through us to the capital stock of said company the amount of sixty thousand ($60,000) dollars, as prescribed by said act."

On August 30, 1883, this evidence was furnished to the board of county commissioners, and they then subscribed, in the name of the county, the said sum of $60,000 to the capital stock of said company and received therefor twelve hundred shares of said stock, and at the same time executed and delivered to the officers of the said railway company seven per cent. bonds of said county to the amount of $60,000, which bonds are still held by said company, a portion of the interest thereon having been paid by the county treasurer to the treasurer of the railway company.

On September 5, 1884, this action was commenced by the plaintiffs, as taxpayers of said county, in behalf of themselves and all the other taxpayers, against the railway company, the county commissioners, county treasurer, and county auditor of Colleton County, for the purpose of enjoining the railway company from disposing of the bonds, and that they be required to deliver the same to be cancelled, and for the purpose of enjoining the county auditor from assessing any tax for the payment of said bonds, and the county treasurer from paying out any taxes already assessed and collected for the purpose of paying said

28

bonds, and for general relief. The grounds upon which the plaintiffs base their demands are: 1. That so much of the act of the legislature above referred to as purports to confer upon the county commissioners power to issue bonds of the county is in violation of section 20, article II., of the constitution, and is therefore null and void, and consequently that the bonds would constitute no legal obligation of the county in the hands of any one. 2. That the said bonds being still in the hands of the railway company, they cannot claim the protection of *bona fide* purchasers for value without notice, and hence that if the bonds were issued without compliance with the prescribed conditions, they do not, while in their hands, constitute valid obligations of the county. 3. That the condition precedent to the issue of these bonds, which required a petition from a majority of the freeholders of said county before any election could be ordered, was not complied with, and the issue was therefore illegal.

The Circuit Judge held that the act was constitutional; that the railway company could claim the protection of *bona fide* purchasers for value without notice; and that even if they could not, the burden of proof was upon the plaintiffs to show a failure to comply with all the conditions prescribed in the act, and this they had not done. He therefore dissolved the temporary injunction previously granted and dismissed the complaint. From this judgment the plaintiffs appeal upon several grounds set out in the record, which need not be repeated here, because, according to our view, but three questions properly arise upon this record: 1. As to the constitutionality of the act. 2. As to the burden of proof. 3. As to whether the Circuit Judge erred in his finding of fact.

Section 20, article II., of the constitution, with which the act here in question is supposed to be inconsistent, reads as follows: "Every act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title." As we have said in *Charleston* v. *Oliver* (16 *S. C.*, 56), upon the authority of Mr. Justice Cooley, "there has been, and ought to be, a general disposition to give a liberal construction to constitutional provisions like this now under consideration, rather than to embarrass legislation by an unnecessary strictness of construc-

tion." Hence, when a question, under this clause of the constitution, is presented for adjudication, we are bound to take a liberal and enlarged view, and if practicable bring the legislation which is assailed as unconstitutional within the limits prescribed by the supreme law of the land.

Now, looking at the act in question in this spirit, we do not see how it conflicts with the provision of the constitution which has been quoted. The *"subject"* to which the act relates is the Green Pond, Walterboro, and Branchville Railway Company, and that subject is undoubtedly expressed in the title. Nor do we find that the act relates to any other subject. As is usual with acts bearing such a title, after constituting certain persons a body politic and corporate by the name which they have chosen, it goes on to declare what such corporation may do, and how it may obtain the means for effecting the desired purpose—by receiving subscriptions to its capital stock. The fact that it also provides that a certain corporation, which otherwise would not have the power to do so, may subscribe to the capital stock upon certain prescribed conditions, does not, it seems to us, bring that portion of the act in conflict with the constitution. No new *subject* is introduced into the act, but the subject which all the while engages the attention of the legislature is the railway, which necessarily includes any appropriate means for its construction. For, as is well said in *San Antonio* v. *Mehaffy* (96 *U. S.*, 315), "when an act of the legislature expresses in its title the object of the act, the title embraces and expresses any lawful means to achieve the object, thus fulfilling the constitutional injunction that every law shall embrace but one object, and that shall be expressed in its title."

In that case the Supreme Court of the United States was called upon to decide a question identical in principle with the one now under consideration. There the legislature of Texas had passed an act entitled "an act to incorporate the San Antonio Railroad Company," the twelfth section of which authorized the city of San Antonio to subscribe for stock and issue bonds therefor, and in an action on those bonds it was contended that the act was in violation of that clause of the constitution of Texas which declared that "every law enacted by the legislature shall

contain but one object, and that shall be expressed in the title."
The court held that the act was not in violation of the constitu-
tion for the reason given in the language quoted above.    It is
observable that in that case the same cases from the Texas court
(*San Antonio* v. *Gould,* 34 *Texas,* 49; *Geddings* v. *San Anto-
nio,* 47 *Texas,* 548), which are relied upon here by appellants'
counsel, were also cited before the Supreme Court of the United
States.

So in *Supervisors* v. *People* (25 *Ill.,* 181), it was held that an
act to incorporate a railroad company may constitutionally con-
tain a provision authorizing counties to subscribe to its stock, or
otherwise aid in the construction of the road.    See, also, the case
of *Morton, Bliss & Co.* v. *Comptroller General* (4 *S. C.,* at page
442), where it was held that a provision in an act entitled "an
act to provide for the appointment of a land commissioner, and
to define his powers and duties" for the issue of bonds of the
State to be used by the land commissioner in the purchase of
lands, was not in conflict with sec. 20, art. II., of the constitu-
tion.    We agree, therefore, with the Circuit Judge, that the act
is not unconstitutional.

The next inquiry is as to the burden of proof.    The appellants
contend that inasmuch as the county commissioners had no
authority to issue the bonds in question until all the conditions
prescribed by the act had been complied with, that the burden of
proof is upon the defendants in this proceeding.    It is to be
observed that this is not a proceeding to compel the county com-
missioners to issue the bonds in question, nor is it an action on
the bonds.    On the contrary, the action here is to compel the
cancellation of the bonds after they have been issued, upon the
ground that the conditions upon which alone they could be law-
fully issued have not been complied with.

There can be no doubt that the county commissioners were, in
the first instance, to determine the question as to whether the
conditions precedent were complied with, and having formally
determined that they were, and having acted upon such determi-
nation by issuing the bonds, it is quite clear that the plaintiffs
can have no cause of action until they show a failure to comply
with some or all of the prescribed conditions.    For, in addition

to the well settled rule that public officers are presumed to perform their duty until the contrary is shown, it is manifest that the only foundation for the plaintiffs' action is the allegation that some of the prescribed conditions have not been complied with, and until that allegation is proved the plaintiffs have no cause of action.

As is said in 1 *Greenl. Evid.*, § 78 : "To this general rule, that the burden of proof is on the party holding the affirmative, there are some exceptions in which the proposition, though negative in its terms, must be proved by the party who states it.   One class of these exceptions will be found to include those cases in which the plaintiff *grounds his right of action upon a negative allegation*, and where, of course, the establishment of this negative is an essential element in his case; as, for example, in an action for having prosecuted the plaintiff maliciously and without probable cause," the want of probable cause must be proved.   So here the very ground upon which the plaintiffs base their action is that there was no petition signed by a majority of the freeholders of the county, praying that an election might be ordered; and this, though a negative allegation, must be proved by the plaintiffs, as otherwise they would have no cause of action.

If this were a proceeding to compel the county commissioners to issue the bonds, or if it were an action by any one but a *bona fide* holder, without notice, upon the bonds, then the cases cited by the counsel for appellants would be in point, ; but as that is not the nature of the proceeding, but on the contrary, its object is to set aside and annul what has been done by the county commissioners, it is incumbent on the plaintiffs to show that they have either acted without authority, or that they have exceeded the authority conferred upon them.   We do not think, therefore, that there was any error upon the part of the Circuit Judge in holding that the burden of proof was upon the plaintiffs.

The only remaining inquiry is one of fact.   Did the plaintiffs succeed in showing that all or any of the prescribed conditions to the issue of the bonds had not been complied with ?   Upon this issue of fact the Circuit Judge found against the plaintiffs, and we cannot say that such finding was without any evidence to support it, or was manifestly against the weight of the evidence.

Under the view which we have taken, the question whether the railway company can claim the rights of a *bona fide* holder without notice, does not arise, and has not, therefore, been considered.

The judgment of this court is that the judgment of the Circuit Court be affirmed.