STATE *EX REL.* BUCHANAN v. STATE TREASURER.

1. SALARY—STATUTES—CIRCUIT JUDGE.—Under the salary reduction
   act of 1893, and the appropriation act of same year, the former took
   effect on November 1st, 1894, and a Circuit Judge elected in De-
   cember, 1894, is only entitled to the salary as reduced by the act of
   1893.
   Rule of construing conflicting statutes stated.
2. IBID.—MANDAMUS—JURISDICTION—STATE OFFICERS—STATE.—There
   being no permanent, continuing statute or constitutional provision
   fixing the salary of a Circuit Judge, mandamus will not be issued
   to compel the comptroller general to issue a warrant therefor, and
   the state treasurer to pay, where there has been no appropriation
   therefor, as such proceeding would be against the State, and the
   Court is without jurisdiction.

3. RES JUDICATA—MANDAMUS.—The decree of a Circuit Judge expressing his opinion that a claim should be paid, but refusing to issue a mandamus requiring its payment, is not a judgment from which respondent could appeal, and does not adjudicate the right to the writ.
4. Rehearing refused.

Before TOWNSEND, J., Richland, July, 1903.   Reversed.

Petition for mandamus by O. W. Buchanan against State Treasurer, R. H. Jennings, and Comptroller General, A. W. Jones.   From Circuit order directing writ, respondents appeal.

*Attorney General U. X. Gunter,* for appellants.

*Mr. R. W. Shand,* contra.

April 11, 1904.   The opinion of the Court was delivered by

MR. JUSTICE WOODS.   We adopt the respondent's clear and accurate statement of the facts.

"Respondent claims that he is entitled to be paid the salary allowed by law to a Circuit Judge at the time of his election and qualification; that such salary is the amount named in the general appropriation act of December 23, 1893, and not that named in the salary reduction act of December 22, 1893.

"The main facts are as follows: By the salary reduction act, approved December 22, 1893, to go into effect 1 January, 1894, the salary of a Circuit Judge was fixed at $3,000; by the general appropriation act, approved the next day, and which went into effect immediately, December 23, 1893, salaries were provided for under the prior salary acts, giving to Circuit Judges $3,500, and in this act it was declared in section 13: 'That in the event that salaries or other compensation for services now provided for by law for officers, clerks and other persons, for which appropriation is herein made, shall be fixed by law at other rates than those herein

provided for, such rates shall not affect such salaries or other compensation for the year 1894, but the amounts herein appropriated shall be paid them.'   21 Stat., 417, 477.

"By comparison of this appropriation act with salary reduction act of the previous day and prior salary acts, it will be seen that the salaries of the appropriation act were the same as in the prior salary acts, and not at all in agreement with the salary reduction act of the day before except in cases where that act made no changes.

"During the year 1894, on 4 December, O. W. Buchanan was elected Judge of the Third Circuit, and four days afterwards he qualified and entered upon the discharge of his duties, his first term ending December 8, 1898.   On 24 December, 1894, the general appropriation act was passed and went into effect, wherein only $3,000 was appropriated for the salary of the Judge of the Third Circuit.   Judge Buchanan received this $3,000 per annum for the four years of his first term, though demanding that he be paid $3,500."

Judge Buchanan applied to the Circuit Court for a writ of mandamus to compel the comptroller general to issue his warrant and the state treasurer to pay such warrant for the sum of $500 for each year the petitioner held the office of Circuit Judge, being the difference between $3,000, the sum actually paid, and $3,500, the sum petitioner claims he was entitled to receive each year.   Judge Dantzler held by his decree, dated November 7, 1902, that the State was justly due the petitioner the sum of $2,000, which covered the claim for his first term as Circuit Judge; but that upon his second election, the act then in force fixing the salary of Circuit Judges applied just as if he had not before held office. Judge Dantzler, as we understand his decree, practically refused to issue the writ at that time on the ground that the appropriation was then exhausted, and that it was not to be assumed that the General Assembly would refuse to pay the amount he found to be due.   The petitioner was given leave to renew his motion after the adjournment of the session of the General Assembly commencing January, 1903.

No provision having been made for the claim by the General Assembly, the petitioner on July 3, 1903, filed an entirely new petition, reciting the facts, including the decree of Judge Dantzler, and praying "that a writ of mandamus may issue, directed to the comptroller general, A. W. Jones, and state treasurer, R. H. Jennings, commanding the former to audit and allow and to issue his warrant upon the state treasurer for the sum of $2,000, being $500 for each and every year of your petitioner's term of office, commencing 8th December, 1894, and commanding the state treasurer to pay such warrant."

Upon hearing the petition and return, Judge Townsend ordered the writ to issue. From this order the comptroller general and the state treasurer appeal, alleging:

"That his Honor, Judge Townsend, erred in adjudging the return to the petition as insufficient, and directing a writ of mandamus to issue:

"1. In that the salary reduction act of 1893, approved December 22d, 1893, 21st Stat., 416, reducing the salary of the Circuit Judge to $3,000, was passed and enacted prior to the election of the petitioner as such Judge; and that said act, in so far as it fixed the salary to be paid the Circuit Judges after the year 1894, was of force when the petitioner was elected and entered upon the discharge of his duties as Circuit Judge.

"2. In that it appeared upon the face of the petition that no appropriation has been made by law of any amount for the payment of the said sum of $2,000 alleged in the petition to be due the petitioner.

"3. That the Court is without jurisdiction to issue the mandamus prayed for, inasmuch as the State is the real party in interest, and the mandamus prayed for would direct the payment by the State of a debt alleged to exist against it, the respondents, the state treasurer and comptroller general, having no personal interest in the subject matter of the suit, and the relief sought being an affirmative and official action by the State officers in performing an obligation which at-

taches to the State in its political capacity, and not the mere performance of a ministerial duty.

"4. In that there were no funds in the treasury upon which the comptroller general could draw his warrant directing the state treasurer to pay the claim mentioned in the petition."

We consider, first, the status and construction of the salary reduction act, approved December 22, 1893, and the appropriation act, approved December 23, 1893.

In *State* v. *Stoll,* 17 Wall., 425 (21 L. ed., 650), the Court says: "If, by any reasonable construction, the two statutes can stand together, they must so stand. If harmony is impossible, and only in that event, the former law is repealed in part, or wholly, as the case may be." See 1 Endlich on Statutes, sec. 210. Where two statutes are passed at the same session, there is a still stronger presumption that they are intended to harmonize and not conflict, and it is the duty of the Court to consider them as far as possible one statute, and endeavor to find what appears to have been the intent of the legislative body. Therefore, the salary reduction bill having been approved December 22, 1893, must be regarded amended and changed by the appropriation act passed the next day, so far as the two acts are in conflict. *Riggs* v. *Pfister,* 21 Ala., 469; *Townsend* v. *Little,* 109 U. S., 504. The reduction of salaries contemplated by the former act must, therefore, be regarded suspended during the period the latter act provided for payment of the larger salary.

As already intimated, as soon as the conflict can be regarded in any reasonable view at an end, it is the duty of the Court to give to the former statute, as a separate enactment, full force, both as to the time when it shall have effect and as to its subject-matter. It is important, also, in the discussion to have in mind the familiar rule that violation of the Constitution is not to be imputed to the General Assembly, if such a conclusion can be avoided by any fair and reasonable interpretation of its enactments.

The salary reduction act repealed by necessary implication all previous salary acts, so far as they related to the offices therein mentioned, but by its terms it did not go into effect until January 1, 1894. We now inquire for what further time its operation was suspended by the appropriation act, approved December 23, 1893. This inquiry involves a consideration of the scope of the latter statute.

The Constitution of 1868, article IX., section 13, provides: "The fiscal year shall commence on the first day of November of each year." In accordance with this requirement, the General Assembly, by the act approved December 23, 1893, as appears from the title of the act, made appropriation "for the fiscal year commencing November 1st, 1893." Section 13 of this act is as follows: "That in the event that salaries or other compensation for services now provided for by law for officers, clerks and other persons, for which appropriation is herein made, shall be fixed by law at other rates than those herein provided for, such rates shall not affect such salaries or other compensation for the year 1894, but the amounts herein appropriated shall be paid them." It is important to determine whether the words "the year 1894" referred to the calendar year or to the fiscal year; for if the fiscal year was meant, then the appropriation for the salary of the Judge of the Third Circuit ended on November 1, 1894, and the act reducing the salary of Circuit Judges to $3,000 was in effect without limitation when Judge Buchanan was elected on December 4, 1894.

It is true, that where reference is made to a certain year, the presumption is that the calendar year is meant. But where a legislative body is acting under a Constitution providing a fiscal year different from the calendar year, it seems clear that its fiscal legislation should be referred to the constitutional fiscal year and not the calendar year. We think this rule of interpretation should be adopted in the absence of any express legislative intention.

An examination of the statutes, however, will show the General Assembly has said by direct expression that it

meant by "the year 1894" to refer to the fiscal year 1894—that is, the fiscal year ending November 1, 1894. The act of 1893 making appropriations for that fiscal year by its express terms carries salaries and other public obligations to November 1, 1894, and no further; and this act provides for a salary of $3,500 per annum for Circuit Judges. The like act of 1894 took up the salaries and other public obligations on November 1, 1894, and carried them to November 1, 1895, providing a salary of $3,000 for Circuit Judges. We think, therefore, the General Assembly has expressed its intention by these acts, passed in consonance with the constitutional provision as to the beginning and end of the fiscal year, that the reduction of salaries should take place at the close of the fiscal year, November 1, 1894.

We agree with petitioner's counsel that a salary may be fixed by an appropriation act providing for it, but the presumption is obviously very strong against an intention to fix in an appropriation bill the amount of salary to run beyond the period for which the appropriation is made. The contrary intention is here indicated. The appropriation is "for the salaries of the eight Circuit Judges, $28,000," and this is, as we have seen, for the fiscal year ending November 1, 1894. When the provision is made that if salaries of the officers mentioned "shall be fixed by law at other rates than those herein provided for, such rates shall not affect such salaries or other compensation for the year 1894, but the *amount herein appropriated shall be paid them,*" it seems clear from the last clause, which we have italicised, that the rate of salary was not provided by the act beyond the amount actually appropriated, and that amount reached only to November 1, 1894.

Whether it would be a violation of that rule of the Constitution which requires that "every act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title," for the General Assembly in an act entitled "An act to make appropriations to meet the ordinary expenses of the State government for the fiscal year com-

27—68

mencing November 1, 1893," to attempt to fix a salary to
run beyond the end of the fiscal year referred to in the title,
is a question we do not consider, for the reason that we do
not think such an attempt was made.

As already indicated, if Judge Buchanan had been elected
before November 1, 1893, he would have been entitled to a
salary of $3,500 per annum for his entire term, notwith-
standing that might have been intended to be the salary only
during the currency of the appropriation bill, for the reason
that the salary with which he entered office could not be
lessened. But he was elected and qualified in December,
1894, after the end of the fiscal year and after the reduction
act went into effect. We are, therefore, forced to the con-
clusion that he was entitled to only the reduced salary.

Assuming, however, that the petitioner is entitled to the
amount claimed, we next consider whether any appropria-
tion has been made from the State funds; for, as we under-
stand, it is conceded that the Court can require money to be
paid from the State treasury only when it has been
appropriated by the Constitution or a statute. In
article II., section 22, of the Constitution of 1868,
it is provided, "No money shall be drawn from the treasury
but in pursuance of an appropriation made by law." If the
Constitution, in addition to providing that the Judges "shall
at stated times receive a compensation for their services to be
fixed by law which shall not be diminished during their con-
tinuance in office," had also provided the amount of the
compensation, there would be great force in the argument
that this would constitute an annual and certain appropria-
tion requiring no further legislative action to warrant and
require its payment by the fiscal officers of the State. This
was held to be the law in *Thomas* v. *Owens,* 4 Md., 190; in
*State* v. *Hickman* (Mont.), 8 L. R. A., 404, and other cases.
See, also, note to *Carr* v. *State,* 22 Am. State Rep., 638.
But the essential difference between those cases and this is
that our Constitution of 1868 left the amount of the salary
to be fixed by the General Assembly, and there was, there-

fore, no constitutional appropriation of any particular sum to be paid.

Strong argument has been presented, also, in support of the proposition that when the salary claimed is fixed by a permanent continuing statute, the actual right to which omission from an annual appropriation act will not affect, no special current appropriation is necessary to entitle the claimant to payment. *Henderson* v. *Burdick,* 24 L. R. A., 266 (Wyo.) But the petitioner cannot sustain the application for mandamus on this ground, for the reason that here his claim does not rest on a continuing statute, but on the temporary annual appropriation act itself, which in terms limits the appropriation to a time which expired before the beginning of his term of office. In addition to this, there was not only an omission to appropriate and provide in the temporary statute the salary claimed, but an annual appropriation by the next General Assembly of a smaller amount than that claimed. So that the conclusion is inevitable that the legislative branch of the government, from which the appropriation must come, has practically declined to pay the larger salary by providing for the payment of a smaller. We think, therefore, there has been no appropriation of public funds for the payment of the amount demanded.

If there had been such appropriation, it would be the obvious ministerial duty of the comptroller general to issue his warrant and of the treasurer to pay it, and the Court would enforce this duty by mandamus. As there is no such appropriation, this application must be regarded as a proceeding against the State, and the Court is without jurisdiction to entertain it. The General Assembly has acted in the matter, and the refusal of the executive officers to pay the claim is in consonance with direction coming to them from that branch of the government which alone is empowered to provide for the payment of the State's obligations. The law is thus stated in *Pennoyer* v. *McConnaughy,* 140 U. S., 20 (L. ed., 35, 363) : "Where the suit is brought against the officers of the State, as representing the State's action and

liability, thus making it, though not a party to the record, the real party against which the judgment will so operate as' to compel it to specifically perform its contract," it is, in effect, a suit against the State itself. *In re Ayers,* 123 U. S., 443 (31, L. ed., 216) ; *Louisiana* v. *Jumel,* 107 U. S., 711 (27, L. ed., 448) ; *Antoni* v. *Greenhow,* 107 U. S., 769 (27, L. ed., 468) ; *Cunningham* v. *Macon & B. R. Co.,* 109 U. S., 446· (27, L. ed., 992) ; *Hagood* v. *Southern,* 117 U. S., 52 (29, L. ed., 805). See, also, *Fitts* v. *McGhee,* 172 U. S., 516 ; *Butler* v. *Ellerbe,* 44 S. C., 256, 22 S. E., 425.

We cannot escape the conclusion that the issuance of the writ under the circumstances would be an effort on the part of the judicial department of the government to coerce the legislative department.

The fourth defense of the comptroller general and the state treasurer, covered in this Court by the fourth exception, is: "For a fourth defense: The respondents say that there are no funds in the treasury upon which the comptroller general can draw his warrant directing the state treasurer to pay the claim mentioned in the petition."

If there had been an appropriation of the amount claimed, this defense would not avail, because it is not stated that there are no funds in the treasury, only that there are none applicable to this claim. But as there has been no appropriation, the proposition embraced in this defense is a necessary sequence and must be sustained.

It only remains to consider the question whether petitioner's right to the writ was adjudicated in his favor by the decree of Judge Dantzler, from which there was no appeal. Judge Dantzler held that the claim should be paid, and that the writ should be issued whenever there should be funds in the treasury; but he refused to order it issued at that time, holding as a fact that the actual appropriation had been exhausted. No relief was given, and hence there was no judgment in favor of the petitioner. Manifestly the treasurer and comptroller general could not appeal, because no order or judgment had been made against them.

No appeal would lie from Judge Dantzler's expression of opinion that the claim was just, and that the writ of mandamus should issue if there were any funds in the treasury. An indication of opinion as to what judgment would be rendered under a different state of facts, or should be rendered in the future, is not a judgment and is not binding on the parties. Van Fleet's Former Adjudication, section 27; 24 A. & E. Ency. Law (2 ed.), 792; *Child* v. *Morgan,* 51 Minn., 116; 52 N. W., 1127.

The judgment of this Court is, that the judgment of the Circuit Court be reversed and the petition dismissed.

4   Petition for rehearing refused, May 11, 1904.