14545

PLOWDEN v. BEATTIE, COMPTROLLER GENERAL, *ET AL.*

(193 S. E., 651)

232

*Messrs. John M. Daniel, Attorney General, J. Ivey Humphrey and M. J. Hough, Assistant Attorneys General,* for appellants, cite:

*Mr. Charlton DuRant,* for respondent, cites:

October 25, 1937.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

Respondent was auditor for Clarendon County for the years 1931, 1932, 1933 and 1934, and was paid by the State of South Carolina as its two-thirds of his salary for the years 1932, 1933, and 1934, the sums of $1,283.10, $1,129.11, and $1,091.92, respectively.

Respondent alleges that his salary for these years, as fixed by the general law of this State, Section 2700 of the Code of 1932, was $2,250.00 annually, and as two-thirds of this salary is payable by the State, he is due a balance by

the State of $216.90 for 1932, $370.89 for 1933, and
$408.08 for 1934, or a total of $995.87.

He commenced an action in mandamus against appellants
in the Court of Common Pleas for Richland County, but
by consent the action was transferred to the Richland
County Court, resulting in decree of that Court ordering
that the appellant A. J. Beattie, as Comptroller General of
the State of South Carolina, do issue his warrant or war-
rants in favor of respondent in above-stated amounts
claimed as back salary due from the State, and that the
appellant, Eustace P. Miller, as Treasurer of the State of
South Carolina, do pay said warrants upon presentation.

We need not concern ourselves with the local supply bills
of Clarendon County wherein it was attempted to reduce
the salary of the auditor of that county, since similar lo-
cal Acts have been declared unconstitutional, null and void
in the case of *Salley v. McCoy et al.,* 182 S. C., 249, 189
S. E., 196.

The only question of fact over which there was any
issue having been decided against appellants, and
there being some testimony to sustain the trial Judge,
such finding will not be disturbed. Also, the exception to
the finding of the trial Judge, not having been argued, is
presumed to be abandoned.

The cardinal questions raised by the appeal, and the only
ones argued by appellants, are: (1) What was the salary
of the auditor of Clarendon County for the years 1932,
1933, and 1934, in which is included the question: Does
the annual appropriation Act supersede or have equal force
with a permanent statute? And (2) is so much of the ap-
propriation Act of 1932 (37 St. at Large, p. 1567), as
undertakes to decrease the salary of county auditors for
the year 1932, unconstitutional? A careful reading of the
appropriation Acts for 1933 and 1934 (Act May 8, 1933,
38 St. at Large, p. 796, and Act March 16, 1934, 38 St.
at Large, p. 1865) does not disclose that county auditors

are referred to except the appropriation of a lump sum with which to pay them.

Under Section 2700 of the Code of 1932 (Act of 1929), the annual salary of the auditor of Clarendon County is $2,250.00, two-thirds of which, $1,500.00, is payable by the State. The State appropriation Act for 1931 (Act May 9, 1931, 37 St. at Large, p. 446, § 56) reduced the pay of county auditors from the scale paid in 1930 (the State's portion), on salaries from $1,301.00 to $1,800.00, 6 per cent. The State appropriation Act for 1932, at page 1577, provides that the State's portion of the salary of county auditors shall be reduced from the basis of 1931 on salaries of $1,201.00 to $1,500.00, 12 per cent.; and on page 1625, in Section 57, it is provided that any increases or decreases of salaries over or under amounts paid in 1931 shall become effective April 1, 1932. This provision was apparently inserted so as to avoid any possible conflict with Section 3212 of the Code of 1932. This last-mentioned section will be discussed later.

A simple calculation discloses that the State's portion of the salary of the auditor of Clarendon County for the year 1931 was $1,410.00. In the year 1932, the State's portion of the auditor's salary for Clarendon County for the months of January, February, and March was one-fourth of $1,410.00, or $352.50. For the balance of the year of 1932, if the salary had not been decreased, the State would have been due the auditor of Clarendon County $1,057.00; but the salary after April 1, 1932, having been reduced by the appropriation Act for 1932, 12 per cent., as aforesaid, the State was due him not $1,057.50, but $930.60. This added to the $352.50 for the months of January, February, and March, 1932, made the portion of the salary due by the State for 1932, the sum of $1,283.10 (the amount paid), if the appropriation Act of 1932 supersedes or has equal force for the period of time covered with a permanent continuing statute.

On account of its persuasiveness and influence on this opinion, we here set forth Subdivision 1 of Section 3212 of the Code of 1932:

"(1) *Authorization.*—The State Treasurer is hereby authorized, empowered and directed to pay the salaries and expense allowance in lieu of salaries of State officers, county auditors and treasurers and employees for the months of January, February, and March of each year, the same to be paid upon a warrant issued by the Comptroller General and the Comptroller General is hereby required to issue such warrants. The payment of all salaries of State officers, county auditors and treasurers and employees shall be made upon the basis of the preceding year as set forth in the appropriation Act, except constitutional officers who shall be paid at the rate specified in the statutes for the term for which they have been elected."

It will be noted from the foregoing that it was recognized by the Legislature that the salaries of State officers, except constitutional officers, and county auditors and treasurers, who are not constitutional officers, would be subject to change annually by the State appropriation Act; and so that these officers would not be discommoded while awaiting the passage of the yearly appropriation Act, Section 3212 provided for the payment of salaries based on the salary of the preceding year. If increased or decreased, the necessary additions or deductions could be made for the remaining nine months of the year so as to conform to the salary appropriated. The section under discussion was formerly Act 838 of the Acts of 1930, p. 1397, after the passage of Section 2700 of the Code, and repealed all inconsistent Acts, and adopted as a criterion in the payment of salaries by which to be governed for the first three months of the year, the amount appropriated for officers the preceding year.

When no increase or decrease in the salary of an officer is made in the appropriation Act for any given year, then the general permanent statute controls.

In principle, the case of *Brooks v. Jones*, 80 S. C., 443, 61 S. E., 946, is on all fours with the phase under discussion in this case. There, a permanent statute fixed the salary of the clerk of this Court at $800.00 per annum. The State appropriation Act for 1908 raised the salary to $1,000.00, and when the Comptroller General refused to issue his warrant on the State Treasurer for the increase, an action in mandamus was instituted.

We quote from the decree of the Circuit Judge granting the mandamus, at pages 444 and 445 South Carolina Reports, which decree was adopted as the opinion of the Court, and unanimously adopted in so far as the principle of law was concerned, as shown by the concurring opinion of Mr. Justice Jones (afterwards Chief Justice), at page 449 of 80 S. C., at page 947 of 61 S. E., concurred in by Mr. Justice Woods.

From main opinion:

" 'An appropriation act, though generally in duration temporary, has equal force and effect as a permanent statute for the time being. If approved subsequently to such permanent act, and there is irreconcilable conflict, the latter is suspended during the time the appropriation Act is of force. *U. S. v. Mitchell*, 109 U. S., 146 (3 S. Ct., 151, 27 L. Ed., 887) ; *Buchanan v. State Treas.*, 68 S. C., (411) 415, 47 S. E., 683.

" 'If an appropriation act appears to increase or diminish the salary provided in a permanent salary act, the former controls (if there be no constitutional prohibition violated), provided it is apparent that it was the intention of the Legislature to make the change. "The whole question depends on the intention as expressed in the (appropriation) statutes." *U. S. v. Mitchell, supra; Belknap v. U. S.*, 150 U. S.,

588 [14 S. Ct., 183, 37 L. Ed., 1191]; *Buchanan v. State Treas., supra.'*"

From concurring opinion:

"It is competent for the Legislature, by means of an appropriation act, to increase or lessen the salary of an officer (where there is no constitutional inhibition), provided the intent to do so may be fairly inferred from the language of the statute. *Belknap v. U. S.,* 150 U. S., 588 [14 S. Ct., 183, 37 L. Ed., 1191]; citing cases including *U. S. v. Langston,* 118 U. S., 389 [6 S. Ct., 1185, 30 L. Ed., 164]; *Buchanan v. Treasurer,* 68 S. C., [411] 415, 47 S. E., 683. When such intention is clearly manifest, the appropriation statute is considered to be in conflict with a previous statute fixing such salary and to operate so as to suspend the previous general statute during the currency of the appropriation statute."

See, also, the case of *State v. Rhame,* 92 S. C., 455, on pages 461, 462, 75 S. E., 881, 883, Ann. Cas., 1914-B, 519, wherein it is stated: "Public officers are created for the benefit of the commonwealth, incumbents have no contract or property rights in them, and, unless otherwise it be provided by the Constitution, they are subject entirely to legislative control. Hence, subject to the Constitution, the General Assembly may fix the term, provide for removal, abolish the office, reduce the term, and in every respect control the existence, powers, emoluments, and tenure of public officers."

Section 2700 of the Code was amended in 1933 by Act No. 230, approved April 17, 1933 (38 St. at Large. p. 290), but the salary for the auditor of Clarendon County was not affected.

We now come to the question if so much of the appropriation Act for 1932 as reduces the salary of county auditors is unconstitutional as violative of Article 3, Section 17, of the Constitution of 1895, which reads as follows: "Every Act or resolution having the force of law shall re-

late to but one subject, and that shall be expressed in the title."

The title of the appropriation Act for 1932 (37 St. at Large, p. 1567) reads as follows: "An Act to Make Appropriations to Meet the Ordinary Expenses of the State Government for the Fiscal Year Beginning January 1, 1932, to Provide a Tax to Defray the Same and Regulate the Expenditure Thereof; To Authorize the Purchase of Certain Obligations of Chesterfield County; To Reduce the Salary Schedule for Teachers Provided in Sections 5480-81 of Vol. II, Code of Laws, 1932; To Prescribe the Rate of Interest on Certain Highway Obligations and Declare Certain Obligations of the Highway Department Preferential Collateral for Securing Public and/or Trust Funds and to Authorize the Issuance of Notes for the Payment of Teachers' Salaries and Other State Aid for Education Herein Appropriated."

In passing upon this question, we are fortunate in having well-settled principles and rules of law as laid down by numerous decisions of our own Court, where Acts of the General Assembly were attacked as violative of the very section of the Constitution under consideration.

In order to declare a statute unconstitutional, its invalidity should be shown beyond a reasonable doubt, and every presumption must be indulged in favor of the constitutionality of the Act. *McKiever et al. v. City of Sumter et al.,* 137 S. C., 266, 276, 135 S. E., 60; *Poulnot v. Cantwell,* 129 S. C., 171, 123 S. E., 651; *Battle v. Willcox,* 128 S. C., 500, 122 S. E., 516; *Santee Mills v. Query,* 122 S. C., 158, 115 S. E., 202; *Powell v. Hargrove,* 136 S. C., 345, 134 S. E., 380.

It is a grave matter to declare a solemn enactment of the Legislature, a co-ordinate branch of the government, invalid, and the Court in its deliberation and conclusions should be guided by the well-settled principle that the unconstitutionality of an Act must be shown beyond a rea-

sonable doubt. *State ex rel. Richards v. Moorer,* 152 S. C., 455, 150 S. E., 269; *Wingfield v. South Carolina Tax Commission,* 147 S. C., 116, 144 S. E., 846; and the cases cited in the preceding paragraph.

"It is not necessary that the title should be an index of the contents of the statute." *Briggs v. Greenville County,* 137 S. C., 288, 135 S. E., 153, 163, and quoted with approval in *State v. Moorer, supra.*

"The mandate of the Constitution is complied with if the title states the general subject of legislation and the provisions in the body of the act are germane thereto as means to accomplish the object expressed in the title." *Verner v. Muller,* 89 S. C., 117, 71 S. E., 654, 655, and citing *Connor v. Railroad Co.,* 23 S. C., 427; *State v. O'Day,* 74 S. C., 448, 54 S. E., 607.

" * * * The restriction requiring the subject of an Act to be expressed in its title should be reasonably construed, considering substance rather than form, to require the expression in the title of the general object but not the details or incidents, or means of effecting the object sought and to include the subject and not the purpose of the Act and the reasons which brought about the enactment of it by the Legislature." 36 Cyc., 1018-1020.

For further authority in keeping with the above principles of law, reference may be had to the cases and general law cited and quoted from in *State v. Moorer, supra,* and *McKiever v. Sumter, supra;* both opinions of the Court by Mr. Justice Stabler (now Chief Justice). In view of these opinions, and others, it would be a work of supererogation to herein cite additional authorities.

With the foregoing principles in mind, can it be said that the portion of the appropriation Act of 1932, reducing the salaries of county auditors and treasurers for that year by 12 per cent. after April 1, is unconstitutional?

The title declares it to be, "An Act to Make Appropriations to Meet the Ordinary Expenses of the State Govern-

ment for the Fiscal Year Beginning January 1, 1932, to Provide a 'Tax to Defray the Same and Regulate the Expenditure Thereof."

While Section 2700, and as amended by the Act of 1933, is continuing appropriation of the salary of county auditors, yet it has been the custom to appropriate annually a lump sum with which to pay same, and this fact therefore has no bearing on the matter under discussion. It is common knowledge that the State pays two-thirds of the salary of county auditors, and that they are therefore *quasi*-state officers. Each year the State appropriation Act deals with the salaries of its officers, although the salary of a constitutional officer cannot be changed during such officer's term of office.

The appropriation Act is the one "big piece" of legislation to occupy the time of the Legislature at each session of the General Assembly, and is probably the most studied bill; that is, by the greatest number of legislators composing the membership of the General Assembly. So then, if this section of the Constitution was intended to guard against the possible abuse of slipping through legislation under the guise of a title foreign to such legislation, it is not needed in so far as the appropriation Act is concerned. But, is not the salaries to be paid by the State a matter to be considered in providing a tax to defray the same, just as much as other appropriations? These salaries, especially when there are forty-six auditors and forty-six treasurers, located in the various counties composing the State, aggregate no inconsiderable amount, and must be taken into account in providing for the payment thereof. These salaries are a part of the ordinary expenses of the State government. It would, therefore, appear that the increase or decrease of a salary to be defrayed by the State is germane to the title of "An Act to make appropriations to meet the ordinary expenses of the State Government, * * *" and "to provide a tax to defray the

same * * *." At least there is a reasonable doubt as to the unconstitutionality of the Act, and under the law of this State, this doubt must be resolved in favor of the Act's constitutionality. Expressing it in another way, the violation of the constitutional inhibition must be plain and unmistakable. See 26 Am. & Eng. Enc. of Law. (2d Ed.), 574.

These principles, of course, apply with equal force to the appropriation Acts of 1933 and 1934. However, there is a material difference between that part of the respondent's claim which arises under the appropriation Act of 1932 and that part which arises under the appropriation Acts of 1933 and 1934. Under the appropriation Act of 1932, the respondent's right to prosecute the present cause is founded upon (1) the continuing appropriation for his salary made by Sections 2700 and 3212 of the Code, (2) subject to the specified reduction of 12 per cent. made by the appropriation Act of 1932. The specific direction of the statute as to the amount of the salary decrease must be taken to override any inadequacy in the appropriation made in the same Act. In other words, the 1932 appropriation Act specifically amends Section 2700 of the Code (we are ignoring the amendment of Section 2700 in 1933, since the amendment does not affect the auditor of Clarendon County) by reducing the salary of respondent by 12 per cent., and as thus amended, the continuing appropriation made by Section 2700 remains in effect. So that, under this Act (1932), the respondent obtains his remedy upon the principle that payment of the salary of an officer of the State, which is provided for in a continuing legislative appropriation, may be enforced by mandamus.

A different situation is presented under the appropriation Acts of 1933 and 1934. While no reference to the salary of county auditors is made in the narrative portions of these Acts, the appropriation by the Legislature of a sum of money to pay county auditors, without more, cannot be

deemed by us to have less effect than a declaration by the Legislature of its purpose to fix the salary of these officers at this decreased amount. Any other view of the matter would mean that we ascribe to the Legislature either an entire lack of purpose or an abortive attempt to limit the expenditure of the State in this particular channel. We cannot adopt either of these views in dealing with the action of a coordinate branch of the government. It is our opinion that the amount of the appropriation for the salaries of county auditors, taken in connection with the legislative history on this subject and the economic conditions prevailing at the time, constitutes a legislative declaration that the salaries of county auditors shall be so reduced, on a proportionate basis, as to bring the aggregate within the amount appropriated for their payment.

We are here not dealing with any constitutional issue. The titles of the appropriation Acts of 1933 and 1934, pertinent to any question raised, are practically identical with that of 1932. Section 2700 of the Code is a statutory schedule of salaries. Under a long legislative history it has been the practice of the Legislature to deal with the subject of salaries in the annual appropriation Acts and these Acts of course have the same force as the Code provisions which they affect. And in case of inconsistency, the appropriation Act, if later in date, necessarily prevails.

But even if this view of the matter were debatable, the fact remains that the respondent is here undertaking to collect, by writ of mandamus, a salary claim for which no appropriation has been made, or, expressed in another way, the balance of a salary claim which would exceed the appropriation that has been made therefor, and obviously this makes the claim one for an alleged debt against the State. It is impossible to treat Section 2700 of the Code as a continuing appropriation to pay a salary item which the Legislature itself, by a subsequent enactment, has by indirection said shall not be paid, and which

we have held herein suspends temporarily the general Act on this point.

It is not for this Court to nullify the effects of a ██ legislative Act solely because the most direct method of legislation has not been used. We may not look with favor on the idea of dealing with the salaries of public officers by the indirect method of cutting down aggregate appropriation items which provide for the salaries of such officers, but that view would furnish no basis upon which to deny to the Acts of the Legislature the effect which they obviously are intended to have.

That mandamus is the proper proceeding to require ██ the payment of salaries, where the Act sought to be enforced is purely ministerial duty, cannot be questioned.

The order appealed from is reversed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.