14821

WALLACE v. SUMTER COUNTY *ET AL.*

(1 S. E. (2d), 345)

*Messrs. L. E. Purdy* and *Epps & Epps,* for appellants,

*Mr. Braxton C. Wallace,* for respondent,

February 13, 1939.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

Under the general laws of the State it is provided that county treasurers shall receive as compensation for their

services a salary, and a fee of $1.00 for each tax execution issued against delinquent taxpayers of their respective counties, when such tax execution is collected.

Respondent is the duly elected, qualified and commissioned treasurer of Sumter County. and has been the treasurer of said county continuously since the first day of July, 1931, and for many years prior thereto, and has regularly discharged his duties as such treasurer.

By Acts of the General Assembly of South Carolina passed in 1930 and 1931, and other Acts, it is provided that the treasurer of Sumter County shall not receive the fees on tax executions, but that when these executions, including the fee for the treasurer, are collected, such fee or fees shall be turned into the county treasury and used for county ordinary purposes.

Respondent brought his action against Sumter County and its Board of Commissioners, hereinafter referred to as appellants, alleging that by reason of such special Acts, appellants had collected and appropriated $8,731.00 of fees belonging to him during the period of from March 1, 1932, and July 30, 1937. Paragraphs four and five of respondent's complaint are as follows:

"4. That the General Assembly of South Carolina has passed the following Acts:

"(a) Act No. 1135, Acts of 1930, and (b) Act No. 125, Acts of 1931, both of which provide in substance, that the Treasurer of Sumter County shall pay into the County Treasury the hereinbefore referred to fees, which the County Treasurer shall place to the credit of the General or Ordinary County Fund.

"And upon information and belief, the said Acts, and each and *every other* Act of the General Assembly which attempt to deprive the Plaintiff of his fees and compensation; *prior to* the ratification of the Amendment to Article III, Section 34, Subsection IX of the Constitution of South Carolina, made in 1935; are null and void, unconstitutional and without effect, *in that the same are, and were* in viola-

tion of Article I, Sections 5 and 8, and Article III, Section 34, Subsection 9 of the Constitution of 1895, and the Fourteenth Amendment, Article I, Section 10 of the Constitution of the United States; all such Acts being *Special Acts,* where a general law was applicable, and *depriving* Plaintiff *of Property without due process of law.*

"5. That the Plaintiff has not received the hereinbefore mentioned One ($1.00) Dollar for each execution or warrant issued by him as Treasurer, when the said execution was paid by the defaulting taxpayer, but such fee and compensation has been received and retained by Sumter County, in their general fund, and in violation of both the State and Federal Constitution."

The appellants deny that the law as to Sumter County provides that the county treasurer is to receive anything for issuing tax executions, "and allege on the contrary that both the provisions of the Code and the statutes, there being several not mentioned in the complaint, provide that all of the fees going to the county treasurer in connection with tax executions are to be paid into the county treasury for the general use of the county, and that the treasurer shall only receive a salary in compensation for all of his services." They admit the passage of the Acts referred to, and "allege that both the provisions of the general statutory law of the State and other Acts of the Legislature provide that the treasurer of Sumter County shall pay into the county treasury all fees alluded to in the complaint," and deny that any of said provisions so providing are contrary to any constitutional provision, but that they are legal and binding. They deny that any of said Acts violate the Federal Constitution, but allege on the contrary that the turning of said fee into the ordinary county funds is in compliance with the law of the State.

For a counterclaim, appellants pleaded that beginning with the year 1931, and through 1934, the salary of respondent had been by the General Appropriation Act gradually reduced; that Sumter County was responsible for the payment

of only one-third of such salary as reduced, and that it had appropriated and paid him in excess of the amount for which it was responsible, and for such excess so appropriated and paid, it was received by respondent without authority, and as over compensation for the amount to which he was entitled by law.

Respondent replied to the counterclaim, alleging that only the State's portion of the salary had been reduced, and did not reduce the portion to be paid by the county; that the county was yet indebted to him on account of the portion of the salary which he was entitled to receive from the county, "and that there has been heard a mandamus proceeding wherein the plaintiff (respondent) is suing for the recovery as (of) such salary as is his due."

There are but two questions before this Court: (1) Did the Court err in giving respondent judgment for unpaid salary, and in refusing to give the appellants judgment on the counterclaim for salary paid by the county in excess of one-third of the salary provided by the general law as reduced by the yearly General Appropriation Acts; and (2) did the Court err in holding that the Acts relied upon by the appellants to deprive the respondent of his fees are unconstitutional, as being in violation of Article III, Section 34, Subsection 9 of the Constitution; and in not holding that the Act of 1935 did not deprive respondent of execution fees for executions issued and delivered to the collecting officer prior to the effective date of the Act, and that if such Act undertook to deprive respondent of such execution fees, it was unconstitutional in that it was in violation of the "Due Process" clauses of the State and Federal Constitutions.

The pleadings, and the record disclose that the underpayment of salary was not before the Court in this proceeding in the light that respondent was claiming affirmatively any relief thereabout, and on the contrary any affirmative relief for respondent was being sought in another proceeding entirely; and before the trial Judge rendered his judgment

herein, he was furnished a copy of the decree or order of Judge Sease in the other proceeding which was adverse to respondent. We are therefore, in this case concerned with only the counterclaim interposed by appellants which we will treat as a plea in setoff rather than in the restricted manner as pleaded.

There is, of course, no question but that Section 2700 of the Code was amended by the yearly General Appropriation Acts as to the amount of the salaries of county treasurers. *Plowden v. Beattie,* 185 S. C., 229, 193 S. E., 651. The proportion of the salary to be paid by the State and counties respectively was unaffected. *Salley v. McCoy,* 182 S. C., 249, 189 S. E., 196.

Here the County of Sumter paid more than one-third of the salary provided for respondent by the General Appropriation Act, and appellants are *now* claiming a setoff (Counterclaim) for such excess of salary paid under the equitable principle applied in *Gamble v. Clarendon County,* 188 S. C., 250, 198 S. E., 857. Gamble was a county sheriff, and as pointed out in that case there is no statewide statute in South Carolina providing for or relating to the salary of the sheriff and no constitutional provision touches that subject, though the office is created by the Constitution. Under the general law of the State the sheriff was entitled to certain fees which could not be taken from him. He accepted the salary legislated for him with knowledge that it was tendered him in full payment of his services. Under those circumstances, we allowed an offset of the salary paid the Sheriff against the fees to which he was entitled.

In the instant case, respondent, the treasurer of Sumter County, was entitled to a certain amount as salary to be paid by the county (one-third of the amount fixed by the general law). Respondent accepted the excess salary with knowledge that it was tendered him in full payment of his services. He was also entitled to fees on executions issued against delinquent taxpayers, and as in the *Gamble case,* these fees could not be taken from him prior to the amend-

ment of Article III, Section 34, Subsection 9 of the Constitution in 1935. (Nor even after such amendment, as to the fees provided for services which he had performed prior to such legislation since such legislation would be in conflict with the "Due Process" clauses of the State and Federal Constitutions.) Consistency requires that we hold that as to such excess salary paid, appellants should be allowed an offset as against any fees due respondent.

Appellants have narrowed the issues involved in the preparation of this opinion by abandoning the position that the Acts of the General Assembly undertaking to appropriate to the county the fees of respondent could deprive him thereof prior to Act No. 280 of the Acts of 1935, approved May 11, 1935. However, attention is invited to the opinion in *Hurst v. Sumter County et al.*, recently filed.

The claim of the respondent extends to all executions issued by him for the years 1932, 1933, 1934 and 1935, and which have been collected through July, 1937, and to the date of the trial of the cause. As thus expressed, this would embrace executions issued both before and after the Act of May 11, 1935, which was passed subsequent to the effective date of the ratification Act amending Article III, Section 34, Subsection 9 of the Constitution. The constitutional amendment of 1935 empowered the county to change the method of compensation of county officers and to deflect their fees to the county treasury.

We can take judicial notice of the fact that executions are not issued by a county treasurer until during the year following the year for which taxes are due. In consequence of the holding hereafter, we now eliminate from our consideration respondent's claim for fees for issuing tax executions for the year 1935. They could not have been issued until in 1936.

With respect to all such executions as were issued and delivered prior to the effective date (May 11, 1935), of the Act of 1935, whether the same were collected before or after such effective date, there is no question as to the re-

spondent's right of recovery, in the light of the principals expressed in *Salley v. McCoy* (third appeal), opinion filed January 4, 1939, and reported in Westbrook's Advance Sheets, January 7, 1939, and our holding hereinbelow.

However, as to such executions as were issued and delivered after the effective date of such constitutional amendment, it becomes necessary to consider the Act approved May 11, 1935, in the light of Paragraph four of the complaint. In that paragraph the plaintiff alleges that all Acts of the General Assembly which attempt to deprive the respondent of his fees and compensation "prior to the ratification of the amendment to Article 3, Section 34, Subsection 9 of the Constitution of South Carolina made in 1935, are null and void, unconstitutional and without effect," because it is alleged, they are in violation of the provisions of Article 3, Section 34, Subsection 9 of the State Constitution respecting the enactment of special legislation, and in violation of the provisions of both the State and Federal Constitution respecting the deprivation of property without due process of law.

If the Act of 1935, to which reference is made above, undertakes to deprive the respondent of the execution fees of his office, the provisions of the complaint to which reference is made above apparently amount to a recognition of the validity of that Act, which would then become an insuperable obstacle to the recovery by the respondent of all such fees as arise from the issuance and delivery of executions which were not at the effective date of the Act already turned over to the sheriff or chief of rural police for collection, but would not interfere, even in that light, with the collection by the plaintiff of the execution fees on all such executions as were issued and delivered prior to the effective date of the Act.

In order to set at rest any controversy which may arise should we treat the complaint as having recognized the validity of the said Act, the appellants in their answer having treated the complaint as not admitting the validity of the

Act insofar as it undertook to deprive respondent of fees for executions issued and delivered prior to its passage—the "Due Process" clauses of the Constitutions, Federal and State—we will briefly discuss this phase of the case.

The trial Judge in passing upon the validity of the Acts relied upon by appellants to deprive respondent of his fees made no distinction between the Acts passed prior to and after the Act ratifying the amendment to Article III, Section 34, Subsection 9 of the Constitution, and held that *all* the Acts were special laws where general laws were applicable, and in violation of the article, section and subsection just above mentioned. As to the Act passed after the constitutional amendment, such objection had been removed. The unconstitutionality of the Act was based solely on the ground stated, and the trial Judge did not pass on the other constitutional objection raised ( ?) by the pleadings. Despite the ambiguity of his complaint, respondent apparently relies upon the violation of the "due process" clause of the State Constitution as to fees earned prior to the effective date of the Act, and has asked an affirmance of the judgment on the ground that the Act was unconstitutional in that it violated Article I, Sections 5 and 8 of the State Constitution.

We do not find that it is necessary for us to directly pass upon such phase of the constitutionality of the Act; and this Court will always avoid passing upon the constitutionality of an Act of the Legislature except when it becomes necessary.

This statute, when read as a whole, is seen to be an Act which has for its single essential purpose the transfer of the duties respecting the *collection* of delinquent taxes from the offices of the sheriff and of the chief of the rural police to a tax collector for Sumter County, for whose appointment provision is made in the Act. It does not purport to deal with the subject-matter of the duties or compensation of any other offices than that of tax collector. The title of the Act is limited, in its reference to the county offices affected thereby to the tax collector, and to the transfer of the duties respect-

ing the collection of delinquent taxes to him. There is no reference in the title to the treasurer, or to the salary or fees of that official.

At the time of the passage of this Act, the Legislature was laboring under the impression that Act No. 131 of the Acts of 1933, had deprived respondent of the fees provided by law in such cases; and in the body of the Act under discussion are these two sentences:

" * * * It shall be the duty of the County Treasurer of Sumter County to turn over to the Tax Collector any and all executions for taxes which may hereafter become delinquent or which now may be delinquent and have not been turned over to any officer for collection. All of the fees now provided by law for delinquent taxes in Sumter County shall be charged against the delinquent taxpayer, and when collected by the Chief of Rural Police shall be turned into the County Treasury and used for County ordinary purposes; Provided however That on all executions issued prior to the effective date of Act No. 131 of the Acts of 1933, the Sheriff and Treasurer shall receive the fees provided by law in such cases."

The Act of 1933, admittedly being null and void, it had no effective date, and the proviso in the last of the foregoing quoted sentences can have no effect. Another thing: the words "Chief of Rural Police" were evidently intended to be "Tax Collector."

Considered as a whole from the standpoint of its obvious purpose, we do not think that this statute should be held to deprive the respondent in this case of the right to receive the fees collected on delinquent tax executions after the date of its passage, where the executions had been delivered by the treasurer to the sheriff or chief of rural police prior to the enactment of the statute.

The conclusion above stated is nevertheless strengthened by a recognition of the constitutional aspects of the Act. The failure of the title of the Act to make any reference to the office of treasurer, or to the fees of the treasurer's office

is not only a strong indication that the Legislature did not intend to deal with such fees, but it also raises the question, not necessary to be decided in this case and yet very pertinent, whether the Act would not violate the provisions of Article 3, Section 17 of the Constitution which requires under repeated decisions of this Court that the title of an Act shall reasonably disclose the subject-matter thereof, if any other construction than that above indicated were adopted.

Eliminating therefore from consideration the Act of 1935 as an obstacle to the collection by the respondent of the executions issued by the respondent and actually turned over by him to the sheriff or chief of rural police since March 1, 1932, and prior to May 11, 1935 (the date of the enactment of the Act in question), the fees therefor are recoverable by the respondent in this action.

The order and judgment appealed from is reversed, and the case is remanded to the Circuit Court for such further proceedings as may be necessary to determine the amount due the respondent.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.