## WALLACE v. UNITED STATES.

APPEAL FROM THE COURT OF CLAIMS.

No. 855.   Submitted January 10, 1890. — Decided January 27, 1890.

An envoy extraordinary and minister plenipotentiary of the United States to Turkey was never appointed before July 13, 1882. On that day, the claimant, being minister resident and consul general of the United States to Turkey, at a salary of $7500 a year, was appointed to the higher grade. By each of the diplomatic appropriation bills of 1882, 1883 and 1884, $7500 was appropriated for the salary of an envoy extraordinary and minister plenipotentiary to Turkey. The claimant, having been paid the $7500 salary for each of those years, sued in the Court of Claims to recover the difference between that amount and an annual salary of $10,000, claiming the latter under § 1675 of the Revised Statutes, as amended by the act of March 3, 1875, c. 153, 18 Stat. 483; *Held*, that as, under the amendment of 1875, the salary was to be $10,000, " unless where a different compensation is prescribed by law," and the office did not exist before July 1, 1882, and the first provision made by Congress for a salary for it was made by the act of July 1, 1882, and was for $7500, and the same provision was continued while the claimant thereafter held the office, and he was paid the $7500, he had no further claim.

The case distinguished from that of *United States* v. *Langston,* 118 U. S. 389.

APPEAL from the Court of Claims. Judgment there against the claimant.

*Mr. George A. King* for appellant.

*Mr. Assistant Attorney General Cotton* and *Mr. Robert A. Howard* for appellees.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is an appeal from a judgment of the Court of Claims, dismissing the petition, in a suit brought by Lewis Wallace against the United States. The findings of fact were as follows:

" 1. The claimant was, on the 13th day of July, in the year 1882, appointed envoy extraordinary and minister plenipoten-

tiary of the United States to Turkey, and held that office continuously from the time of said appointment till and including the 24th day of August, 1885. (Commission of claimant and letter of Secretary of State.)

"2. The Secretary of State, in the estimate of the appropriations for the diplomatic and consular service for the following fiscal years made the following specific estimate for the salary of the representative in Turkey as follows, to wit :

"'Turkey.

"'Ministers resident in  .  .  .  Turkey at $7500 each (for fiscal year ending June 30, 1883).

"'Envoys extraordinary and ministers plenipotentiary to .  .  .  and to Turkey, $7500 (for the fiscal year ending June 30, 1884).

"'Envoys extraordinary and ministers plenipotentiary to .  .  .  and to Turkey, $7500 (for the fiscal year ending June 30, 1885).

"'Envoys extraordinary and ministers plenipotentiary to Turkey, $7500; additional submitted, $2500 (for fiscal year ending June 30, 1886).'

"3. With his appointment or commission claimant also received the following notice from the Secretary of State :

"'DEPARTMENT OF STATE,
"'WASHINGTON, *July* 21, 1882.

"'Lewis Wallace, Esquire, etc., etc., etc.,

"'SIR : Congress having recently raised the grade of the legation at Constantinople to a plenipotentiary mission, and the President, by and with the advice and consent of the Senate, having appointed you to be envoy extraordinary and minister plenipotentiary of the United States of America to Turkey, I beg to transmit herewith the following papers :  .  .  .

"'The act of Congress does not increase your compensation or contemplate other changes than as herein mentioned. You are referred to the personal instructions given you as minister resident, June 4, 1882, for the conduct of the business of the

mission under your present appointment, and for the necessary expenditures incident to the maintenance of the legation at Constantinople.'

"4. Claimant, in his first account with the Treasury Department, stated the same as follows:

"'United States Government in acc't with Lew. Wallace, minister plenipotentiary at Constantinople.

"'To am't of my salary from July 1st, 1882, to 30th September 1882, — months, at the rate of $7500 per annum.'

"The claimant charged and was allowed as said minister plenipotentiary, from July 13, 1882, to June 30, 1885, at the rate of $7500 per annum, as shown above, by copy of first account.

"5. The compensation paid to the claimant, from the time of his appointment till and including the 30th of June, 1885, was at the rate stated in his accounts, to wit, at the rate of $7500 per annum, and claimant's account stands closed upon the books of the Treasury by payment in full.

"6. Claimant was minister resident and consul general of the United States to Turkey at the date of his appointment as envoy extraordinary and minister plenipotentiary."

On the foregoing findings, the court decided, as matter of law, that the petition should be dismissed, under the decision of that court in the case of *Francis v. United States*, 22 C. Cl. 403.

On the 13th of July, 1882, when the claimant entered upon his duties as envoy extraordinary and minister plenipotentiary of the United States to Turkey, section 1675 of the Revised Statutes, as amended by the act of March 3, 1875, c. 153, 18 Stat. 483, was in force, reading as follows:

"SEC. 1675. Ambassadors and envoys extraordinary and ministers plenipotentiary shall be entitled to compensation at the rates following, per annum, namely:

"Those to France, Germany, Great Britain and Russia, each, seventeen thousand five hundred dollars.

" Those to Austria, Brazil, China, Italy, Japan, Mexico and Spain, each, twelve thousand dollars.

" Those to all other countries, unless where a different compensation is prescribed by law, each, ten thousand dollars.

" And unless when otherwise provided by law, ministers resident and commissioners shall be entitled to compensation at the rate of seventy-five per centum, chargés d'affaires at the rate of fifty per centum and secretaries of legation at the rate fifteen per centum, of the amounts allowed to ambassadors, envoys extraordinary and ministers plenipotentiary to the said countries respectively ; except that the secretary of legation to Japan shall be entitled to compensation at the rate of twenty-five hundred dollars per annum.

" The second secretaries of the legations to France, Germany and Great Britain shall be entitled to compensation at the rate of two thousand dollars each per annum."

Under the provision of that section, an envoy extraordinary and minister plenipotentiary to Turkey would be entitled to an annual compensation of $10,000, unless a different compensation was prescribed by law. Having received compensation at the rate of $7500 per annum, the claimant brought suit for the difference between that sum and $10,000 per annum, for the time from July 13, 1882, to June 30, 1885.

The office of envoy extraordinary and minister plenipotentiary to Turkey did not exist prior to July 1, 1882. Before that time, the diplomatic representative of the United States to Turkey was of the rank of a minister resident and consul general, and the claimant held that office, at an annual salary of $7500, when he was appointed envoy extraordinary and minister plenipotentiary.

By the act of July 1, 1882, c. 262, 22 Stat. 128, entitled " An act making appropriations for the consular and diplomatic service of the government for the fiscal year ending June thirtieth, eighteen hundred and eighty three, and for other purposes," it was provided " that the following sums be, and they are hereby, appropriated for the service of the fiscal year ending June thirtieth, eighteen hundred and eighty-three, out of any money in the Treasury not otherwise appropriated, for the objects hereinafter expressed, namely ·

"For salaries of envoys extraordinary and ministers plenipotentiary, as follows: To Chili and Peru, at ten thousand dollars each; to Turkey, seven thousand five hundred dollars; in all, twenty-seven thousand five hundred dollars."

By the act of February 26, 1883, c. 36, 22 Stat. 424, entitled "An act making appropriations for the consular and diplomatic service of the government for the fiscal year ending June thirtieth, eighteen hundred and eighty-four, and for other purposes," it was provided "that the following sums be, and they are hereby, appropriated for the service of the fiscal year ending June thirtieth, eighteen hundred and eighty-four, out of any money in the Treasury not otherwise appropriated, for the objects herein expressed, namely: . . .

"For salaries of envoys extraordinary and ministers plenipotentiary, as follows: To Chili and Peru, at ten thousand dollars each; to Turkey, seven thousand five hundred dollars; in all, twenty-seven thousand five hundred dollars."

By the act of July 7, 1884, c. 333, 23 Stat. 227, entitled "An act making appropriations for the consular and diplomatic service of the government for the fiscal year ending June thirtieth, eighteen hundred and eighty-five, and for other purposes," it was provided "that the following sums be, and they are hereby, severally appropriated for the consular and diplomatic service of the fiscal year ending June thirtieth, eighteen hundred and eighty-five, out of any money in the Treasury not otherwise appropriated, for the objects hereinafter expressed, namely: . . .

"For salaries of envoys extraordinary and ministers plenipotentiary to the United States of Colombia and Turkey, at seven thousand five hundred dollars each, fifteen thousand dollars."

No attempt was made by Congress, by those three statutes or by any other statute, to create the office of envoy extraordinary and minister plenipotentiary to Turkey; but, as Congress had, by the act of July 1, 1882, made an appropriation of $7500 to pay the salary of an envoy extraordinary and minister plenipotentiary to Turkey, at the sum of $7500 for the fiscal year ending June 30, 1883, and had thus left it to the Presider

to fill such office, if he chose to do so, under his constitutional power, the President exercised that power by appointing the claimant, on the 13th of July, 1882.

By such provision of the act of July 1, 1882, continued by the acts of February 26, 1883, and July 7, 1884, a different compensation per annum from that of $10,000 was prescribed by law for the envoy extraordinary and minister plenipotentiary to Turkey, within the meaning of section 1675 of the Revised Statutes, before quoted. In view of the fact that the office of envoy extraordinary and minister plenipotentiary to Turkey never had existed and never had been filled by any person prior to July 1, 1882, and of the fact that the first provision made by Congress for that office, in regard to its compensation, was for an annual salary of $7500, that sum must be considered as then having been prescribed by Congress as the compensation for the officer who might be appointed to fill it. It was, therefore, the compensation prescribed by law as the annual compensation for that officer, and was a different compensation from that prescribed by section 1675 of the Revised Statutes; and, according to that section, the compensation could not be $10,000 a year.

The President raised the grade of the legation at Constantinople to a plenipotentiary mission by his appointment of the claimant as envoy extraordinary and minister plenipotentiary to Turkey, on the 13th of July, 1882, and Congress provided for the office an annual salary of $7500. The claimant could have no larger salary, and can recover nothing in this suit.

His counsel seek to apply to this case the doctrine laid down by this court in *United States* v. *Langston*, 118 U. S. 389; but it has no application to the present case. In the Langston case a prior statute had fixed the annual salary of a diplomatic officer at a designated sum, without limitation as to time. A subsequent statute appropriated a less amount for the services of the officer for a particular fiscal year, but contained no words which expressly or by implication modified or repealed the prior statute. In the present case, as has been shown, the prior statute, namely, section 1675 of the Revised Statutes, has no application, because a different compensation for the

office was prescribed by law before the President ever appointed, under his constitutional power, any such officer.

· The judgment of the Court of Claims is

*Affirmed.*