## BELKNAP *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 90. Argued November 20, 21, 1893. — Decided December 11, 1893.

Ordinarily a court has no power to grant a new trial at a term subsequent to that at which the original judgment was rendered.

The Court of Claims, however, under Rev. Stat. § 1088, has power to grant a new trial in such case on a motion on behalf of the United States, and a mandate from this court does not affect that power.

When such a motion is made on behalf of the government on the ground that its officers understood that there was an agreement that a case which had been appealed to this court by the United States, and had been remanded to that court by this court, on the ground that the appellants had not entered it here, was to abide the result in another case appealed from the Court of Claims by the United States and decided here in their favor, the granting of the motion by the Court of Claims must be taken by this court as conclusive on the question whether the evidence warranted the action of that court, as that evidence is not preserved.

The payment to an Indian agent of the amount appropriated by Congress for the payment of his salary being less than the amount fixed by general law as the salary of the office, and his receipt of the sum paid "in full of my pay for services for the period herein expressed," is a full satisfaction of the claim.

*United States* v. *Langston*, 118 U. S. 389, explained and limited.

Mr. *George A. King*, (with whom was *Mr. Harvey Spalding* on the brief,) for appellant.

Mr. *Assistant Attorney General Dodge*, (with whom was *Mr. Charles C. Binney* on the brief,) for appellees.

MR. JUSTICE BREWER delivered the opinion of the court.

The history of this case is as follows: In 1882 the appellant filed his petition in the Court of Claims, alleging that as a duly appointed and commissioned United States Indian agent for a series of years, he was entitled to a salary of $1800 per annum; that he had only received a certain portion of that amount, and praying judgment for the balance. A trial was had before the court, which, on March 19, 1883, filed its findings of fact, and rendered judgment in his favor for the sum of $3400. At the same time was tried the case of *Charles Mitchell* v. *United States*, and they were both argued as presenting the same question of law, to wit, whether a public officer could "recover the difference between the salary established by law for the office which he held and the amount paid to him in accordance with the appropriations made by Congress." An appeal was taken in each case by the United States. That in the *Mitchell case* was duly entered in this court, and was submitted on briefs on March 30, 1883. On November 5 of that year this court rendered its decision in favor of the United States, reversing the judgment of the court below. 109 U. S. 146.

The appeal in the present case was taken on June 14, 1883, but was not entered by the appellant at the October term following, as required by the rules of this court. Thereupon the appellee caused the appeal to be docketed and dismissed; and on May 12, 1884, filed with the Court of Claims the mandate, in which the following orders were set out:

"And whereas, in the present term of October, in the year of our Lord one thousand eight hundred and eighty-three, the said cause came on to be heard before the Supreme Court, and it appearing that the appellant has failed to have its appeal filed and docketed in conformity with the rules of this court: It is now here ordered and adjudged by this court that their appeal from the Court of Claims be, and the same is hereby, docketed and dismissed.

"And it is further ordered that this cause be, and the same is hereby, remanded to the said Court of Claims. (May 5, 1884.)

"You, therefore, are hereby commanded that such proceed-

ings be had in said cause as, according to right and justice and the laws of the United States, ought to be had, the said appeal notwithstanding."

On the 13th of May the United States, by the Attorney General, filed a motion in the Court of Claims for a new trial on the ground that wrong and injustice in the premises had been done to the United States. The reasons therefor, as stated, were that the two cases were heard together; that in both the judgment was for the plaintiff, and both cases were appealed to the Supreme Court; that the same questions of law were involved in each case, and that the defendants understood that the appeal in this case was to abide the decision in the case of Mitchell; that, relying upon this understanding, they took no further action in this case, and it was only in consequence of such reliance that the transcript was not filed by them in the Supreme Court, and the opportunity thus given to the appellant to have the case docketed and dismissed; that by the Mitchell case the law has been decided adversely to the claim of petitioner, and, therefore, that wrong and injustice would under the circumstances be done by permitting the judgment to stand.

On the 2d of June, 1884, the Court of Claims sustained the motion, and granted a new trial. Of this appellant complains. As the new trial was granted at a term subsequent to that at which the original judgment was rendered, (the terms of the Court of Claims beginning on the first Monday in December in each year, Rev. Stat. § 1052,) there would ordinarily be no power in the court to grant such new trial. *Coughlin* v. *District of Columbia*, 106 U. S. 7; *Brooks* v. *Railroad Company*, 102 U. S. 107. But there is in the Revised Statutes a peculiar provision, applicable only to the Court of Claims, which is as follows:

"SEC. 1088. The Court of Claims, at any time while any claim is pending before it, or on appeal from it, or within two years next after the final disposition of such claim, may, on motion on behalf of the United States, grant a new trial and stay the payment of any judgment therein, upon such evidence, cumulative or otherwise, as shall satisfy the court

that any fraud, wrong, or injustice in the premises has been done to the United States; but until an order is made staying the payment of a judgment, the same shall be payable and paid as now provided by law."

In order to give full effect to this statute the Court of Claims must have power to grant a new trial at a term subsequent to that at which the judgment was rendered, for it explicitly provides that it may be exercised at any time within two years. This section has been before this court in several cases, and in them its scope and effect considered and determined. *United States* v. *Ayres,* 9 Wall. 608; *United States* v. *Crusell,* 12 Wall. 175; *Ex parte Russel*, 13 Wall. 664; *Ex parte United States,* 16 Wall. 699 *United States* v. *Young,* 94 U. S. 258; *Young* v. *United States,* 95 U. S. 641, 642, 643. That a mandate from this court does not prevent the operation of this statute or take away the power or interfere with the discretion of the Court of Claims to grant a new trial was settled in *Ex parte Russell, supra.*

The testimony presented to the court in support of this motion is not preserved. We must, therefore, assume it to have been sufficient to establish the facts stated in the motion, and the only question for us to consider is as to the power of the court, upon those facts, to order a new trial. Counsel for appellant contend that they disclose nothing but a mere mistake of law, or ignorance of the rules and practice of this court, on the part of the officers of the government, and that under *Green* v. *Elbert,* 137 U. S. 615, such matters are insufficient. But we do not so understand the record. No case abides the decision of another case except by agreement of the parties; and so, when it is stated that the defendants understood that the appeal in this was to abide the decision in the *Mitchell case,* what is meant is that they understood that an agreement to that effect had been made. If such an agreement had actually been made by the parties, and then, in wilful disregard thereof, one party had taken the steps disclosed here of docketing and dismissing the appeal, a court would properly interfere to prevent the successful consummation of such attempted wrong. Instead of charg-

ing such an agreement, and a deliberate breach thereof by the appellant, all that is claimed by the United States is that there was on their part an understanding that there was such an agreement, and that they acted in reliance upon such an understanding. We are to assume that the testimony showed that there were reasonable grounds for believing in the existence of such an agreement, and for acting in reliance thereupon. The defendants were guilty of no laches or omissions, and the effect upon them is the same as if there had been, in fact, an agreement and a wilful breach. That being so, it would evidently be a wrong, an injustice to the government, not to relieve it from the consequences of such a mistake of fact, and to continue in force a judgment which ought not to have been rendered. We think that the Court of Claims was authorized, upon the facts stated in this motion, to grant a new trial.

It becomes, therefore, necessary to consider the facts as disclosed by the findings made upon the second trial and in connection with the various provisions of the statutes. Section 2052 of the Revised Statutes contains this provision:

"The President is authorized to appoint from time to time, by and with the advice and consent of the Senate, the following Indian agents: . . . Four for the tribes in California, at an annual salary of eighteen hundred dollars each."

On February 4, 1876, appellant was commissioned by the President as agent for the Indians of the Tule River Agency in California. On filing his bond he received a letter enclosing his commission, in which it was stated that his "compensation remains at $1500 per annum." On the 5th of March, 1880, he was reappointed, with a commission in like form. Notice of this appointment was sent to him on the 15th of March by the Commissioner of Indian Affairs, and in the letter was this statement: "The salary of the office is $1000 per annum." The appellant discharged the duties of the office from the time of his appointment, continuously, until September 30, 1882, and received the salary appropriated by Congress therefor, by the several appropriation acts during that time, and his receipts for such compensation contain this

recital: "Being in full of our (my) pay for services for the period herein expressed." Neither the appropriation law in force when the Revised Statutes took effect, nor any of those of the nine succeeding years, appropriated a salary of $1800 for the Tule River Agency. Such appropriations were as follows:

"1873–'74, act of February 14, 1873, (17 Stat. 437, c. 138,) $1500
1874–'75, act of June 22, 1874, (18 Stat. 146, c. 389,).. 1500
1875–'76, act of March 3, 1875, (18 Stat. 420, c. 132,).. 1500
1876–'77, act of August 15, 1876, (19 Stat. 176, c. 289). 1500
1877–'78, act of March 3, 1877, (19 Stat. 271, c. 101,).. 1500
1878–'79, act of May 27, 1878, (20 Stat. 63, c. 142,).... 1000
1879–'80, act of February 17, 1879, (20 Stat. 295, c. 87,) 1000
1880–'81, act of May 11, 1880, (21 Stat. 114, c. 85,)... 1000
1881–'82, act of March 3, 1881, (21 Stat. 485, c. 137,).. 1000
1882–'83, act of May 17, 1882, (22 Stat. 68, c. 163,)... 1000 "

Of these ten appropriation acts the first four made appropriations for only three agencies in California, (Hoopa Valley, Round Valley, and Tule River;) the fifth made an appropriation for only two of these agencies, (Round Valley and Tule River;) while the last five made appropriations for four agencies, that of Hoopa Valley being restored and the Mission Agency being added, but the salary of the agent at this last point was at first fixed at $3000, and by the act of June 14, 1878, 20 Stat. 115, 119, c. 191, reduced to $1300, at which figure it remained under the other acts.

In all these ten acts the appropriations for the pay of the other California agents, as well as the one at Tule River, differ from the figure named in section 2052; in the first five acts the other appropriations being at the same rate as that allowed for Tule River, while in the last five the Round Valley agent is paid $1500, the Mission agent $1300, and the other two $1000.

Since this case was commenced we have had before us the following cases in which a claim was made, on behalf of an officer of the United States, of a right to recover more than

the amount appropriated by Congress for his compensation by reason of the existence of a statute prescribing a salary. *United States* v. *Fisher*, 109 U. S. 143; *United States* v. *Mitchell*, 109 U. S. 146; *United States* v. *Langston*, 118 U. S. 389; *Wallace* v. *United States*, 133 U. S. 180; and *Dunwoody* v. *United States*, 143 U. S. 578. In one of these cases, *United States* v. *Langston*, we held that the act prescribing the salary controlled; in the others, that the appropriation acts were conclusive as to the amount the officer was entitled to receive. The difference in result does not, however, show a variation in ruling. On the contrary, all the cases have been decided in accordance with the general rule laid down in *United States* v. *Mitchell, supra:* "The whole question depends on the intention of Congress as expressed in the statutes."

In the *Langston case* it appeared that the salary of the minister to Hayti was fixed by the Revised Statutes at $7500, and that that sum was annually appropriated until the year 1883. In the statutes of two of those years, to wit, 1879 and 1880, it was expressly provided that the appropriation should be in full for the annual salary, and that all laws and parts of laws in conflict with the provisions of the act should be repealed. In the years 1883, 1884, and 1885 there was simply an appropriation of $5000 for the minister to Hayti. The plaintiff held the office from September 28, 1877, until July 24, 1885. Until 1883 he was paid at the rate of $7500 per annum, but for the remaining years he received only the amount of the appropriation, to wit, $5000 per annum. And this court held that there was nothing in the language of these last appropriation acts which could be satisfactorily construed as repealing the express language of the section fixing the salary at $7500 per annum — a salary which had been recognized by Congress for ten years in its appropriations, and by language in some of the acts clearly declaring that to be the salary attached to that office. Repeals by implication are not favored, and it was held that the mere failure to appropriate the full salary was not, in and of itself alone, sufficient to repeal the prior act. And yet the court conceded

at the close of the opinion that "the case is not free from difficulty."

While not questioning at all the *Langston case*, we think that it expresses the limit in that direction.

In this case there are several considerations which tend to show that appellant's right to compensation was not fixed by § 2052, Revised Statutes. In the first place, the agency at Tule River is not specifically named in the section, though doubtless it would come within its description. It had been an agency existing before the Revised Statutes, and never had there been for it any appropriation over $1500. Congress, in the ten appropriation acts passed after the Revised Statutes and before the close of appellant's term of service, did not recognize the salary of $1800 in respect to any one of the agencies in California. It discriminated between them, giving different salaries to different agencies, some of these being in excess of any prescribed by § 2052. The fact of discrimination, and the constant disregard of § 2052 in respect to all agencies, indicates that the matter was present to the consideration of Congress, and that in naming the various amounts during these several years it was fixing the entire compensation which it intended should be given. It was a legislative readjustment of salaries, for it is not to be believed that Congress during all these years was simply appropriating a part of that which it knew was due to its officers. A significant fact is, too, that when it first appropriated for the Mission Agency, on May 27, 1878, it appropriated $3000, but on June 14, 1878, within less than three weeks, it passed an act reducing the salary to $1300. Still more significant is the fact that up to 1878 the appropriation for Indian agents was without individualizing the amounts for the separate agencies. Thus in the act of August 15, 1876, 19 Stat. 176, c. 289, (and the other statutes were similar,) we find the appropriation in these words : "For pay of sixty-eight agents of Indian affairs, at one thousand five hundred dollars each, except the one at Iowa, at five hundred dollars, namely ;" while from 1878 onward each agency was named, and the pay attached to that agency separately designated. Thus in the act of May 27, 1878, 20

Stat. 64, c. 142, the appropriation commences in this way: "For pay of seventy-four agents of Indian affairs at the following named agencies, at the rates respectively indicated, namely: At the Warm Springs agency, at one thousand dollars; at the Klamath agency, at one thousand one hundred dollars;" and then follow in like manner the name of each agency, and the salary attached thereto, several of the salaries being in excess of those given by said section 2052. Evidently this change grew out of section 4 of the appropriation act of 1876, 19 Stat. 200: "That hereafter the estimates for appropriations for the Indian service shall be presented in such form as to show the amounts required for each of the agencies in the several States or Territories, and for said States and Territories respectively."

This act was passed August 15, 1876, and, apparently, there was not sufficient time before the passage of the appropriation act of 1877, March 3, 1877, to satisfactorily prepare the estimates, and so the form of the legislation of Congress was not changed until 1878. But when changed it was a change indicating that each particular agency was called to the attention of. Congress, and the amount which should be paid to the agent at that agency specifically determined. In this connection it is well to note the language used in the appropriation acts to denote the purpose of the appropriation. Thus, in the act of 1878, and subsequent statutes are similar, it is that the "following sums be, and they are hereby, appropriated . . . for the purpose of paying the current and contingent expenses of the Indian Department;" and immediately thereafter follows the language which we have heretofore quoted, "for pay of seventy-four agents . . . at the rates respectively indicated, namely." This language carries a strong implication that Congress was intending to pay the current expenses in full, and intended that the sums named for these Indian agents should be the total amount they should be entitled to receive. When to these facts is added that the plaintiff with his first commission received notice that the salary was to be $1500, as had been for years theretofore appropriated by Congress, and on reappointment that it was

$1000, and that during the years of his service he received the appropriations and receipted for them as in full payment for his services, we think it must be adjudged that he has received all that of right and by law he is entitled to receive, and that the judgment of the Court of Claims should, therefore, be

*Affirmed.*