[No. 7072. Decided November 20, 1907.]

THE STATE OF WASHINGTON, *on the Relation of E. W. Ross, Plaintiff,* v. C. W. CLAUSEN, *as State Auditor, Respondent.*[1]

OFFICERS — COMPENSATION — CONSTITUTIONAL LAW — INCREASE OF SALARY. Where the commissioner of public lands (an office created by the constitution) was elected for the term of four years and served for two years, drawing salary under general appropriation acts which, for ten years theretofore, allowed a salary of $2,000 per annum, his salary cannot be increased during his term of office by a general act fixing his compensation at $3,000, even if the same were the first general act fixing any salary for such officer.

Application filed in the supreme court October 28, 1907, for a writ of mandate to compel the state auditor to issue salary warrants to a state officer. Denied.

*Frank C. Owings,* for relator.

*The Attorney General* and *A. J. Falknor, Assistant,* for respondent.

CROW, J.—In November, 1904, the relator, E. W. Ross, was elected commissioner of public lands for a term of four years, commencing January 11, 1905, on which latter date he assumed office. The legislature of 1907, by chapter 94, Laws 1907, page 174, fixed the annual salary of the commissioner of public lands at $3,000, and in the general appropriations for the fiscal term beginning April 1, 1907, and ending March 31, 1909, Laws 1907, p. 488, appropriated for salary of the commissioner of public lands, at $3,000 per year, the sum of $6,000. The relator, relying upon this general legislation and the appropriation of 1907, has demanded of the respondent, C. W. Clausen, as state auditor, that he issue salary warrants to the relator from and after March 31, 1907,

[1] Reported in 92 Pac. 453.

at the rate of $3,000 per annum. The respondent refused to issue the warrants at any greater rate than $2,000 per annum, and the relator has applied to this court for an original writ of mandamus to compel him to issue warrants as demanded.

The office of commissioner of public lands was created by §1 of art. 3 of the state constitution. Section 23 of the same article provides that the commissioner of public lands shall perform such duties and receive such compensation as the legislature may direct. In § 7 of the act of 1890, creating "the state land commission," etc., approved March 27, 1890, Laws 1889-90, p. 251, it was provided that the commissioner of public lands should receive a salary of $2,000 annually. The relator contends that this act was repealed by necessary implication by chapter 125, Laws 1893, page 386, § 3 of which again fixed the salary of the commissioner of public lands at $2,000 per annum; that the act of 1893 was expressly repealed by § 106, chapter 178, Laws 1895, page 570; that the act of 1895 was expressly repealed by § 70 of chapter 89, Laws 1897, page 262; that the last-mentioned act utterly failed to fix any salary for the commissioner of public lands, and that there has at no time since 1897 been any law fixing such salary until the general act of 1907 above mentioned. He further contends that, as his salary was first fixed by the last-mentioned act of 1907, his compensation has not been thereby increased during his term of office, and that he is now entitled to be compensated at the rate of $3,000 per annum.

The respondent contends that the act of 1890, in so far as it fixed the salary of the commissioner of public lands at $2,000, has never been repealed either expressly or by implication; but has continued at all times until more than two years after the relator entered upon his present term of office; that the legislature has continually made appropriations for the compensation of the state commissioner of public lands, at the rate of $2,000 per annum, showing the legislative construction of the salary act of 1890, and subsequent acts above

mentioned, and that to now allow the relator the increased salary of $3,000 per annum will violate § 25, art. 3, of the state constitution, which provides that the compensation for state officers shall not be increased or diminished during the term for which they shall have been elected.

If respondent is correct in his contention that the relator's salary was fixed at $2,000 per annum when he entered upon his present term of office, by general legislation which continued in effect for more than two years thereafter, then the relator's application must be denied. Mr. Pierce, in preparing his compilation of the laws of the state of Washington, concluded that §§ 6 and 7 of the act of March 27, 1890, were not repealed, and therefore included them in his Codes of 1901 and 1905, as §§ 8157 and 8158; but, as we view this case, it will not be necessary for us to decide whether any general statute was in force from 1897 to 1907 inclusive, fixing the annual compensation of the commissioner of public lands at $2,000. For the purposes of this opinion, we will, without deciding, assume that no general act existed during that period fixing such compensation. The office of state land commissioner was created by the constitution. Statutes immediately enacted have been succeeded by other statutes continually defining the duties of the office. There can be no question but that, during the entire period from 1897 to 1907, inclusive, the commissioner of public lands has been compensated at the rate of $2,000 per annum for the performance of his official duties, and legislature after legislature has made appropriations accordingly.

Assuming that no general statute providing for a fixed salary existed during the period above named, the legislature, by making biennial appropriations for the commissioner at the rate of $2,000 per annum, directed what his compensation should be. The legislature of 1903 appropriated $4,000 for the fiscal period from April 1, 1903, to March 31, 1905. The relator came into office on January 11, 1905. He was

compensated from this appropriation at the rate of $2,000 per annum, for a period of over two months. The legislature of 1905 made an appropriation of $4,000 for his salary from April 1, 1905, to March 31, 1907, and he was regularly paid at the rate of $2,000 per annum by warrants issued against such appropriation, and was undoubtedly entitled to receive such salary. In the absence of any general statute, the legislature by these appropriations directed what the relator's compensation should be. If he is now permitted to receive more than $2,000 per annum, then we must conclude either that the act of 1907 fixing his salary at $3,000 applies to his entire term of office which commenced in January, 1905, and is retroactive; or that his compensation may be increased during his term of office in violation of § 25, art. 3, of the state constitution; but neither conclusion is tenable.

Conceding the absence of any general law, we are of the opinion that the legislatures of 1903 and 1905, by the appropriations above mentioned, directed what compensation the commissioner of public lands should receive, fixing the same at $2,000 per annum; and that such compensation could not be thereafter increased or diminished during the relator's term of office. This holding is in harmony with the reasoning of a well-considered opinion of the court of appeals of the state of Kentucky, in *Butler County Fiscal Court v. James*, 116 Ky. 575, 76 S. W. 402, which is a later case than *Marion County Fiscal Court v. Kelly*, 112 Ky. 831, 56 S. W. 815, cited by the relator.

In *Butler County Fiscal Court v. James*, *supra*, the appellee James had been elected to the office of county judge at the November election of 1893, and again at the November election of 1897. Under the law of that state it was the duty of the fiscal court to fix his compensation before his election. No such order was made for his second term prior to his election. In the absence of any formal order fixing his salary, the fiscal court afterwards made an appropriation of $500 for his compensation for the year 1898. Thereafter they

made an appropriation of $400 for 1899, $400 for 1900, and $500 for the year 1901, these appropriations being made by separate resolutions at different times. He accepted the appropriations made, and then brought suit to recover $200, claiming $100 extra for each of the years of 1899 and 1900. It seems that it was not only the duty of the fiscal court to fix the appellee's compensation before he was elected or entered upon the discharge of the duties of his office, but also to then fix the same for his entire term. This they failed to do and, during his second term, his compensation was only fixed by the several appropriations above mentioned. The constitution of the state of Kentucky contained a provision similar to ours against the increasing or diminishing of the salary of any officer during the term to which he has been elected. The court of appeals of Kentucky, in passing upon the claim of the appellee, said:

"The purpose of the constitutional provisions is to leave the officials, whose duty it is to fix the salary, free from the importunity and personal influence of the incumbent of the office, and to secure to him for his term, when his salary is once fixed, the amount so agreed to be paid him, and thus make him more independent in the discharge of his official duty. Under these provisions of the constitution it is the duty of the fiscal court to fix the salary of the county judge and other county officers, to be allowed by it, before their election; that is, there should be a general order fixing the salaries, and not an allowance each year for that year; and when the salaries are once fixed, they cannot be changed to affect those already elected or appointed, and any change will not take effect until after the next election or appointment. The Butler Fiscal Court, before the election of appellee, should have made a general order fixing the salary of the county judge; but if they had failed to do this they could fix it after his election, or else it could not be fixed at all, and the failure of the fiscal court to do its duty cannot be permitted to deprive the county judge of his reasonable compensation guaranteed him by law; but when his salary was once fixed, it could not be changed during his term, so that he would receive a different amount for different years of his term. The order

of the county court made at its October term, 1896, did not undertake to fix the salary of the county judge, or make any provision for it, except for the year 1897. It is substantially the same as the order in the case of the *Marion County Fiscal Court v. Kelly,* which was held only to apply to the year 1897. But the order made by the fiscal court on November 9, 1897, appropriated $500 for the county judge's salary for the year 1898, and he was under this order entitled to have a salary of $500 for the first year of his new term. If the court could by a subsequent order allow him a different amount, then his salary would be changed during his term, contrary to the express provision of the constitution. The difficulty with the orders made for the years 1899 and 1900 is that they change the salary of the county judge during his term of office."

By the same course of reasoning, we conclude that, in the absence of any general legislation fixing relator's salary, the appropriations made by the legislature from time to time fixed his compensation, and that, when he has once entered upon the discharge of the duties of his office under such fixed compensation and has received the same for his services during a portion of the term, his compensation cannot be increased or diminished during the term for which he has been elected, either by any general act of the legislature or by any appropriation bill.

The writ is denied.

HADLEY, C. J., DUNBAR, FULLERTON, and RUDKIN, JJ., concur.

MOUNT and ROOT, JJ., took no part.