[No. 11702. *En Banc.* February 11, 1914.]

THE STATE OF WASHINGTON, *on the Relation of E. F. Jones,*
*Plaintiff,* v. C. W. CLAUSEN, *State Auditor,*
*Respondent.*[1]

STATUTES — CONSTRUCTION — INTENT—CUSTOM. The settled practice, for twenty years, of the legislature to create offices and fix the salaries of officers and deputies in the general appropriation bill, should be considered by the courts in ascertaining the intent of the legislature to thereby increase a salary fixed by an earlier general law.

STATES—OFFICERS—SALARY—DEPUTY AUDITOR—STATUTES—APPROPRIATION BILLS—SCOPE. The legislature has power in a general appropriation bill to increase the salary of the state officers, fixed by the act of 1890; and the provision in the Laws 1913, p. 9, appropriating $3,600 for the salary of the deputy state auditor for two years, suspends Rem. & Bal. Code, § 9005, fixing his salary at $1,200 per year.

STATUTES—TITLE—AMENDMENTS—REQUISITES. Const., art. 2, § 37, providing that no act shall be revised or amended by mere reference to its title, but the act or section amended shall be set forth at full length, has no application to an act which is complete in itself although it is a substitute for a former act on the same subject.

STATUTES—TITLES AND SUBJECTS—APPROPRIATION BILLS — SALARY OF STATE OFFICERS. The title to the general appropriation bill,· Laws 1913, p. 9, "an act making appropriations for . . . . maintenance of and sundry expenses at the various . . . state offices, and for sundry civil expenses of the state government," is sufficiently broad to sustain a provision increasing the salary of a deputy state officer, fixed by an earlier general act; especially in view of the settled practice of the legislature for twenty years to include such provisions in the general appropriation bill.

MAIN and ELLIS, JJ., dissent.

Application filed in the supreme court December 2, 1913, for a writ of mandamus to the state auditor to secure the issuance of a warrant. Granted.

[1]Reported in 138 Pac. 653.

*A. J. Falknor* and *R. G. Sharpe*, for plaintiff.

*The Attorney General* and *L. L. Thompson, Assistant,* for respondent.

CHADWICK, J.—Relator alleges that he is now, and ever since the first day of September, 1909, has been, the deputy state auditor. He brings this proceeding against his principal, whose duty it is to audit all claims and draw warrants in payment of all salaries provided by law, to issue unto him a warrant for his November, 1913, salary, at the rate of $1,800 per year, or $150.

The state legislature, at its first session, passed an act fixing the salary of the deputy state auditor at $1,200 per year payable quarterly. Laws of 1890, p. 635; Rem. & Bal. Code, § 9005 (P. C. 485 § 43).

The legislature at its last session (Laws of 1913, p. 9), passed a general appropriation bill. The title of the act is as follows:

"An act making appropriations for the purchase of land for, construction of buildings at; for maintenance of and sundry expenses at the various state institutions, schools and state offices, and for the sundry civil expenses of the state government and for miscellaneous purposes for the fiscal term beginning April 1, 1913, and ending March 31, 1915, except as otherwise provided, and making an appropriation for certain deficiencies, and declaring this act shall take effect April 1, 1913.

"Be it Enacted by the Legislature of the State of Washington: . . . For the office of State Auditor . . . Salary of deputy state auditor, $3,600."

Acting under the advice of the *Attorney General,* respondent has refused to audit and allow relator's salary voucher for a greater sum than the one hundred dollars per month, as provided by the act of 1890. Many other officers and employees of the state are similarly affected, and this proceeding has been brought to obtain the judgment of this court.

Whether the legislature can provide, in a general appro-

priation bill, for an increase of salary to any officer whose salary has been theretofore fixed by a general law, and, if so, whether the title of the general appropriation bill of 1913 is sufficient under art. 2, §§ 19 and 37 of the state constitution, are the questions to be decided. These questions so blend that we will not attempt to discuss them separately, but will treat the case in the order in which it most naturally presents itself.

Before going into the law of the case, a resume of the practice of the legislature in the matter of providing salaries for the employees of the state will not be out of place, for no safer guide to legislative intent is to be found than the settled practice of the former legislative bodies. Keeping in mind the act of 1890 fixing a salary of $1,200 per year, reference to the general appropriation bills from that time to the present, reveals the fact that the legislature appropriated and the state auditor has paid to the deputy state auditor, salaries as follows: 1891, $1,800 per year; 1893, $1,800 per year; 1895, $1,500; 1897, $1,200; 1899, $1,200; 1901, $1,500; 1903, $1,800; 1905, $1,800; 1907, $1,800; 1909, $1,800; 1911, $3,600 for the biennium; 1913, $3,600.

This practice has pertained not alone to the office of deputy state auditor. It has been pursued with reference to almost every employee of the state, especially those who occupy subordinate positions and whose salaries were fixed at a time when they seemed sufficient, but which are admittedly meager when measured by present conditions. The assistants to the attorney general, state treasurer, state auditor, state land commissioner, and secretary to the governor, are but a few of the instances that might be cited. To this practice, the state auditor has hitherto subscribed, and has issued warrants for the amounts fixed in the appropriation bill, notwithstanding the several acts of 1890 fixing the salaries of state officers and their deputies. All of this was within the knowledge of the legislature at the time the act of 1913 was passed. For twenty years and more, it has been the settled practice of the legislative and executive departments of the state to create

offices and employments and to fix salaries of new and old officers by simple reference to the office in the general appropriation bill. It has been, and it well should be, the policy of the courts in construing statutes, to ascertain the intent of the legislative branch of the government. No surer search light can be found than the settled practice of the legislative body, for a habit, if tolerated and acquiesced in for a period of years by the people, and if it in no way offends against any provision of the constitution, becomes a *quasi* custom; and of custom, it is said there can be no higher law.

Cotemporaneous construction of an appropriation bill for a period of thirty years by the legislature and the executive, was held in *Harrison v. Masonic Mut. Ben. Soc.*, 61 Kan. 134, 59 Pac. 134, to be enough to compel a holding of a legislative intent to increase the fees of an officer notwithstanding a prior law fixing his fees. This method of meeting the demand for new places and of increasing the salaries of officers created by former acts has never been challenged in this state. Wherever questioned, it has been generally sustained.

In *United States v. Fisher*, 109 U. S. 143, the salary of the Chief Justice of the Territory of Wyoming was fixed at $3,-000 per annum (16 Stats. at L. 152). On March 3d, 1877, Congress passed an appropriation bill appropriating for the salary of the chief justice, $2,600 per annum. Subsequent appropriation bills made the same provision. It was contended that the salary was fixed by the original act and that notwithstanding the appropriation bill the chief justice was entitled to a greater salary. It was held:

"Not only do the words of the statute make the intention of Congress manifest, but that intention is plainly repugnant to the former statute, which fixes the salary of the chief justice at $3,000. It is impossible that both acts should stand. No ingenuity can reconcile them. The later act must therefore prevail, and the earlier act must for the time covered by the appropriation acts above referred to be considered as suspended."

The salary of interpreters in the Indian country was fixed by Congress at $400 per annum. In subsequent appropriation bills an appropriation of only $300 was made to meet this salary. It was held:

"This course of legislation, which was persisted in for five years, distinctly reveals a change in the policy of Congress on this subject, namely, that instead of establishing a salary for interpreters at a fixed amount, and cutting off all other emoluments and allowances, Congress intended to reduce the salaries and place a fund at the disposal of the Secretary of the Interior, from which, at his discretion, additional emoluments and allowances might be given to the interpreters. The purpose of Congress to suspend the law fixing the salaries of interpreters in Nebraska at $400 per annum, is just as clear as its purpose to suspend the section forbidding any further emoluments and allowances. Our opinion is, therefore, that the intention of Congress to fix, by the appropriation acts to which we have called attention, the annual salaries of interpreters for the time covered by those acts at $300 each, is plain upon the face of the statute.

"The whole question depends on the intention of Congress as expressed in the statutes. Whether a simple failure by Congress to appropriate any or a sufficient sum to pay the salary of an officer fixed by previous law is of itself an expression of a purpose of Congress to reduce the salary, we do not now decide. That is not this case. On the contrary, in this case Congress has in other ways expressed its purpose to reduce, for the time being, the salaries of the interpreters.

"This purpose is of course irreconcilable with the provisions of the Revised Statutes on the same subject, and those provisions must be considered as having been suspended until they were finally repealed by the act of May 17, 1882." *United States v. Mitchell*, 109 U. S. 146.

The salary of our minister to Turkey was fixed at $10,000 (18 Stats. at L. 483). In 1882, 1883 and 1884, Congress appropriated the sum of $7,500 to meet this salary. It was contended by General Lew Wallace, who was immediately affected, that he was entitled to receive the salary fixed by the general law and was not bound to receive as full compensation the amount appropriated, and he brought suit in the

court of claims to recover the difference, or $2,500. From an adverse decision, General Wallace appealed, and the court affirmed the judgment. *Wallace v. United States*, 133 U. S. 180. The reasoning of the court does not help us, but the result of the decision, when considered with other decisions of the same court, permits it to stand as a sustaining authority.

The salary of certain Indian agents was fixed by the general statutes at $1,800 per year. Congress for a term of years appropriated no more than $1,500 per year. It was held:

"Congress, in the ten appropriation acts passed after the Revised Statutes and before the close of appellant's term of service, did not recognize the salary of $1,800 in respect to anyone of the agencies in California. It discriminated between them, giving different salaries to different agencies, some of these being in excess of any prescribed by § 2052. The fact of discrimination, and the constant disregard of § 2052 in respect to all agencies, indicates that the matter was present in the consideration of Congress, and that in naming the various amounts during these several years it was fixing the entire compensation which it intended should be given. It was a legislative readjustment of salaries, for it is not to be believed that Congress during all these years was simply appropriating a part of that which it knew was due to its officers." *Belknap v. United States*, 150 U. S. 588.

The case of *United States v. Langston*, 118 U. S. 389, is cited by respondent as contrary to these cases, and upon comparable facts decisive of the case at bar. We shall discuss this case when reviewing the other cases relied on by respondent.

A general law of the state of South Carolina fixed the salary of the clerk of the supreme court at $800 per year. This salary was appropriated for fourteen years, when the legislature appropriated the sum of $1,000 for the salary of the clerk. It was held:

"It is competent for the Legislature, by means of an appropriation act, to increase or lessen the salary of an officer

(where there is no constitutional inhibition), provided the intent to do so may be fairly inferred from the language of the statute. *Belknap v. U. S.* 150 U. S. 588, citing cases including *U. S. v. Langston,* 118 U. S. 389; *Buchanan v. Treasurer,* 68 S. C. 415, 47 S. E. 978. When such intention is clearly manifest, the appropriation statute is considered to be in conflict with a previous statute fixing such salary and to operate so as to suspend the previous general statute during the currency of the appropriation statute." *Brooks v. Jones,* 80 S. C. 443, 61 S. E. 946.

The salary of the marshal and librarian of the supreme court of Alabama was fixed by general law at $2,000 per annum. A subsequent appropriation bill allowed $1,500 per year. The court held that the officer was entitled to receive no more than $1,500 per year. A general law of the Territory of South Dakota created and fixed the salary of the office of veterinary surgeon at $2,500 per annum. The legislature at a subsequent session appropriated "for the salary" of the veterinary surgeon the sum of $1,200. Held:

"This enactment, we think, reveals a design upon the part of the state legislature to reduce the compensation of the veterinary surgeon to $1,200, and to establish a fixed amount that should cover the expenses of his office. The purpose to suspend the law fixing the compensation is just as clear as its purpose is to limit or establish the amount to be paid for the expenses of his office. There are certain well-known rules for interpreting a legislative enactment, one of which is that it should be interpreted according to the intention of the legislature apparent upon its face; another, that, when two acts are in irreconcilable conflict, the later repeals the earlier act, even though there are no express repealing words." *Collins v. State,* 3 S. D. 18, 51 N. W. 776.

This case was cited approvingly in the case of *Somers v. State,* 5 S. D. 321, 58 S. W. 804.

In *Owen v. Beale,* 145 Ala. 108, 39 South. 907, a general law creating an office and fixing a salary with a specific sum for expenses was held to be repealed by a general appropriation bill passed at a later date and allotting the sum of $2,500 for the maintenance of the department.

The *Assistant Attorney General* relies upon the following cases, holding that a general law creating an office and fixing the salary cannot be repealed by an appropriation act. *State ex rel. Davis v. Cutler*, 34 Utah 99, 95 Pac. 1071; *United States v. Langston*, 118 U. S. 389. The *Cutler* case sustains respondent, but for reasons already noted and to be presently suggested, we conceive it to be contrary to the decided weight of authority. The reasoning of the court implies a guardianship of the courts over the legislature which, if carried to its logical conclusion, would make the court, and not the executive, the holder of the veto power. The *Langston* case was passed as not offensive by the Supreme Court in the *Belknap* case, *supra*, although Mr. Justice Brewer, who wrote the opinion in that case, said of it: "While not questioning at all the *Langston* case, we think it expresses the limit in that direction."

A more discriminating mind than that of the writer is required to distinguish the *Langston* case. If sound, the *Belknap* case is not sound, for the distinguishing facts noted by Judge Brewer are about the same as occurred in the *Wallace* case, which was followed. The case seems to have been tried by the Supreme Court and a Scotch verdict returned.

It is insisted that, although the legislature might change a former law creating an office and fixing a salary through the mediumship of a later appropriation bill, that the title of the present act is not sufficient within art. 2, § 19 of the constitution. "No bill shall embrace more than one subject, and that shall be expressed in the title;" and art. 2, § 37, "No act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length."

If the appropriation bill were to be treated as an act amendatory of the law of 1890, there might be some merit in respondent's contention that it offends against § 37; and it is upon the theory that the appropriation bill is an act amendatory of the previous law that the cases relied on by the *Assist-*

*ant Attorney General* are bottomed; but this court has held that this section does not apply to an act which is complete within itself, although it may repeal by implication or be treated as a substitute for a former act on the same subject. This phase of the law is so exhaustively treated in the case of *Spokane Grain & Fuel Co. v. Lyttaker,* 59 Wash. 76, 109 Pac. 316, that we shall not pursue the inquiry, but rather proceed to the question whether the title of the act (it has been quoted) is sufficient to sustain the appropriation bill treating it as an act which repeals or suspends the former law by implication.

Passing to § 19, it may be said that, in almost all of the cases so far considered, it will be noticed that, wherever quoted, the title of the act was no broader than is the one before us. These cases are therefore authority (negative, it is true) for the sufficiency of the title to the act of 1913. The constitution does not require that a title shall be an index to the body of the act. It is enough if it indicates to the inquiring mind the scope and purpose of the law. The title may be general and all matters incidental or germane thereto may be written into the body of the law. This has been declared so often by this court and is so familiar that a list of the cases would occupy space that had better be devoted to other uses. We cannot conceive of a title more general or better calculated to direct the mind than the words employed in the title before us:

"An Act making appropriations for . . . maintenance of and sundry expenses at the various . . . state offices and for the sundry civil expenses of the state government . . ." Laws 1913, p. 9.

With the history of the former sessions before us, and the admitted practice of the legislature, running over a period of twenty years, an inquirer would be warranted in looking to the body of the appropriation bill when passed by the legislature for a list of the state officers, their deputies and assistants and for their respective salaries. This practice has be-

come constant in our legislative sessions, and the lawyer, as well as the layman, may confidently look to the appropriation bills to ascertain the salaries of our public officials.

Appropriation bills, although temporary in duration, are nevertheless general laws. They are most carefully prepared and maturely considered. If they do not offend against the constitution, and are found to be in irreconcilable conflict with a permanent act, the latter will be held to be suspended or repealed during the time the appropriation bill is in force. *Brooks v. Jones, supra; State ex rel. Buchanan v. State Treasurer*, 68 S. C. 411, 47 S. E. 683.

"The whole question depends upon the intention of Congress as expressed in the [appropriation] statutes." *United States v. Mitchell, supra.*

In a case involving the same question, the supreme court of Pennsylvania held that a title no broader than the one assailed by respondent was sufficient. The court said, in upholding the law:

"The instances cited by the appellant covering a period of twenty years since the adoption of the constitution, show the legislative understanding on the subject, and we may fairly infer that of the executive also, as the various acts cited were approved by the governors. Such understanding and practice are not, of course, binding on the judiciary, who are the ultimate authority in the interpretation of the constitution; but, as the view of the two co-ordinate branches of the government, they are entitled to respectful consideration and are persuasive if the matter be at all in doubt." *Commonwealth ex rel. Greene v. Gregg*, 161 Pa. 582, 29 Atl. 297.

Although not considering an appropriation bill, the words of the supreme court of Indiana in *State v. Gerhardt*, 145 Ind. 439, 44 N. E. 469, 33 L. R. A. 313, in declaring the settled practice of the legislature to be a cogent factor in determining the sufficiency of a title are apropos. After citing many acts of the legislature, as we might if space permitted, the court said:

"Each of these acts might be said to be as amendatory of the original and existing laws upon the same subject as is the statute in controversy. This continued and repeated practice of the legislature, unquestioned for a period of over forty years, becomes a potent factor and lends much strength to an interpretation of the constitution favoring the authority of the general assembly to enact, in the manner it did, the law under consideration. Were we in doubt of this legislative right, we should feel obligated to be controlled by such a practical exposition."

Counsel concedes that the title of the act is sufficient to sustain a provision fixing the salary of an officer where no salary has been fixed by law, saying, and properly so, that the case of *State ex rel. Ross v. Clausen*, 47 Wash. 607, 92 Pac. 453, is decisive upon that point. Treating the appropriation bill as a general law and not as an act amendatory of the former law, we think this concession is conclusive of respondent's case. If the legislature can create offices and fix salaries in an appropriation bill, it can by the same method repeal or suspend an existing law. This seems axiomatic. The court in *Commonwealth v. Gregg, supra,* said:

"As already said, it is conceded on all hands that the legislature had ample power to do the substantial thing that it did, to wit, to authorize the appointment of a clerk in the office of the prothonotary and provide for his salary out of the public treasury, and as the purpose of such appointment and the duties of the appointee were to secure the performance of the regular and ordinary work of the office, we are of the opinion that the legislature might constitutionally do it in the form they did, by an item in the general appropriation bill for the judicial department."

We are met at this point by respondent with the following cases: *State v. Cutler, supra; State v. Steele,* 57 Tex. 200; *State v. Cook,* 57 Tex. 205; *Hailey v. Huston* (Idaho), 136 Pac. 212.

The *Cutler* case holds against our conclusion. The court there proceeded upon the theory that the appropriation bill

was amendatory of the original act and was not a complete act covering the same subject-matter. The court admits:

"It is true that we held in *Mill v. Brown,* 31 Utah 473, 88 Pac. 609, and in *Marioneaux v. Cutler,* 32 Utah 475, 91 Pac. 355, in harmony with the great weight of authority, that this constitutional provision does not apply to independent acts, and, further, when there is an irreconcilable conflict between a later and a prior law, that the later one repeals the former by implication."

The *Steele* case also sustains respondent's contention. As we read the *Cook* case, it does not touch the principle here involved. In the *Huston* case, the salary of the librarian of the State Historical Society was fixed by a general law. The legislature, at its 1913 session, appropriated a greater sum *in solido* for salaries. The title to the act was, in effect, if not in terms, as broad as our own. The reasoning of the court is comprehended in the following:

"It certainly was not contemplated that an amendment to a salary statute could be tucked away in a general appropriation bill, and no reference made to it in the title of the bill. The title to said appropriation bill would not give to any member of the legislature or to any other person any inkling of a purpose to increase a salary. That section of the constitution which provides that every act shall embrace but one subject and matters properly connected therewith, and that such subject shall be expressed in the title, was for the purpose of giving the members of the legislature, as well as citizens generally, notice of the purpose and object of the bill, and provides for titles to all bills, as well as for a unity of title and subject-matter."

From what we have already said, it will be seen that our notion of the place where a person seeking to ascertain the salary of an officer would inquire does not accord with that of the Idaho court. That court, as does the Texas and Utah courts, treats the act reviewed as amendatory rather than as an act complete and repugnant. The court does not go into the books, no authorities are cited, and in our judgment the decision is not sustained by authority or sound reason. If

it be sound in reason, it may possibly be distinguished. The salary of the librarian had been fixed by general law at $1,-200 per annum and his assistant at $600. The appropriation bill did not specify the salary for the particular officer, but made a blanket appropriation as follows: "State Historical Society, salaries .............................$4,250."

Section 1 of the appropriation bill provides, "The following sums, or so much thereof as shall severally be found necessary, are hereby appropriated." It is argued that the words "so much thereof as shall severally be found necessary," must be construed in the light of the law fixing the salary of the relator. When these words are considered as related to the concluding paragraph of the act,

"This act is necessary for the immediate preservation of the public peace, health and safety, and the support of the state government and its existing public institutions, and shall take effect April 1, 1913,"

the conclusion is compelled that the legislature intended to say that the present needs of the state demanded an expenditure of $1,800 per year. The legislature no doubt had in mind that an office or department might thereafter find it possible to reduce the expenses of the department by cutting off some of the authorized expenditures, as is said in *Brooks v. Jones, supra*:

"It is evident to my mind that the words 'if so much be necessary' were intended to apply only to such items the exact cost of which no experience, investigation, knowledge or foresight could determine, and not to salaries known to the legislature to be already fixed by law, and which could, at the will of that body, expressed in an appropriation act, be raised or lowered to a definite amount. The presumption is that the Legislature knew that the salary act of 1893 (effective 1894) fixed the salary of the petitioner at $800, and of the two employees above mentioned at $1,350, and that for fourteen years those sums were appropriated; therefore, I cannot bring my mind to conclude that the General Assembly apprehended that it was at all contingent whether or not $1,000 was 'so much as necessary' to pay $800."

In some of the cases it will be seen that the appropriation bill under consideration repealed all laws "inconsistent therewith."

Holding as we do that, in the light of legislative practice the appropriation bill is a complete act and repugnant to the older act, and not an amendment, it can make no difference whether the repeal or suspension is express, general, or by implication.

We are reminded that no less than five bills were introduced in the last legislature providing for the increase of salaries of five appointive officers, and that none of them passed. From this fact it is concluded by the *Assistant Attorney General* that this,

"must be taken as a plain declaration of the legislative intent; that it was the intention of the legislature that such salaries should not be raised. These various appropriations in excess of the salaries fixed by law, to which counsel has referred, were inserted in the general appropriation act upon the contingency that the bills above referred to should pass, but with the further intent that should such bills fail of passage, then only 'so much thereof' as was authorized by existing statute should be expended. The failure of the legislature to pass these bills cannot be reconciled with the construction of the appropriation act contended for by counsel."

It does not follow because the bills referred to failed to pass that the legislature intended to reject the object sought. Where voted on by either house, they were passed. We must presume, and it is the more reasonable thing to do, that the legislature had in mind its usual method of meeting demands for increased salaries, and preferred to provide for them in the general appropriation bill rather than pass several unnecessary bills. It may be that this method of creating offices and fixing salaries is not the best way; it may be that it gives interested parties an opportunity to pull a string under a blanket and to make up to the blind side of the legislature; yet it is, nevertheless, a lawful way, and has been

sanctioned by the legislative and executive departments since statehood. With this fact before us, we cannot hold, as did the Idaho court, that the members of the legislature would have no "inkling" of the contents of the general appropriation bill. We had rather believe that those who have been charged with the formation of our laws have acted with a proper understanding of the subject-matter of all bills which they have enacted into law. If this were an original proposition, there would be much force in what the *Assistant Attorney General* says, but when looking for legislative intent, we must not confine our vision to the few things done or left undone by one legislature, but must look to the usage of the years and the intent as gathered from all of the acts of the legislative body germane to the subject considered.

Let the writ issue.

CROW, C. J., GOSE, FULLERTON, MOUNT, MORRIS, and PARKER, JJ., concur.

MAIN and ELLIS, JJ. (dissenting)—We are unable to agree with the majority opinion. The title of the act is not expressed in terms sufficiently comprehensive to include the subject of changing the salary of an office which had been previously fixed by general law.

The constitution requires that the subject of an act shall be expressed in the title. Constitution, art. 2, § 19. The title of the act in question neither mentions nor suggests the matter of fixing or raising salaries. So far as the title goes, it is "An act making appropriations for" certain specified purposes.

The title, it is true, does not need to be an index to the body of the act, but it must be sufficiently broad to indicate its scope and purpose. There is nothing in the title of the act here in question to indicate to an inquiring mind that in the body of the act there might be included a provision fixing salaries.

Legislative custom, no matter how long pursued, cannot have the effect of modifying the constitutional mandate.

We therefore dissent.